**FUQUA HOMES, INC., a Delaware Corporation, Plaintiff–Appellee,**

v.

**WESTERN SURETY COMPANY, a South Dakota Corporation, Defendant–Appellant,**

and

Leon Taylor, Lakewood Mobile Homes Sales, Inc., a Colorado Corporation, Sheridan Savings & Loan Association, a Colorado Corporation, Defendants.

No. 79CA0805.

Colorado Court of Appeals, Div. I.

May 1, 1980.

Rehearing Denied May 22, 1980.

Certiorari Denied Aug. 18, 1980.

COYTE, Judge.

Defendant, Western Surety Company (Western), appeals the summary judgment entered in favor of plaintiff, Fuqua Homes, Inc., (Fuqua) and against Western in the sum of $15,000 plus interest. We affirm.

Fuqua's claim against Western is based upon a surety bond which Western furnished to Leon E. Taylor and Selma A. Taylor, as motor vehicle dealers, pursuant to "Art. 11, Chapter 13, C.R.S. 1963, as amended." This bond covered the period July 1, 1975, to June 30, 1976, and provided indemnity up to $15,000 to all persons:

> "for any loss suffered by reason of fraud or fraudulent representations made, or through the violation of any of the provisions of said Art. 11, Ch. 13 C.R.S. 1963 as amended."

In August 1975, a rider changing the principals' name to "Lakewood Mobile Homes Sales, Inc." (Lakewood) was attached to the bond. This rider specifically provided that it did not vary or extend the terms of the bond.

In 1976, Fuqua sued the Taylors, Lakewood, and Western for losses sustained in connection with supplying mobile homes to Lakewood. The claim against Western was predicated on the bond. In 1978, while this suit was pending, the Taylors and Lakewood separately filed bankruptcy petitions in Colorado. Fuqua objected to their discharge from its claim. The bankruptcy court found that Mr. Taylor and Lakewood had wilfully and maliciously converted the property of Fuqua, refused to discharge the claim, and entered judgment in favor of Fuqua in the amount of $45,725. The bankruptcy court specifically declined to address the issue of "false pretenses or false representations in obtaining the property."

Based upon the bankruptcy court findings and judgment, Fuqua filed a motion for summary judgment in the instant suit against Western and a supporting affidavit attaching the bankruptcy court findings and judgment. Western failed to respond thereto. After hearing on this motion, the

Lohf & Barnhill, P. C., Dennis A. Graham, Denver, for plaintiff–appellee.

Treece, Zbar, Schieman, Webb & Hickey, William K. Hickey, James L. Treece, Littleton, for defendant–appellant.

court recognized the bankruptcy court judgment, found that Western, as surety for the judgment debtors, was liable for the "defalcations" of the debtors, and entered judgment against Western in the amount of $15,000, the amount of the bond, plus interest. The court also entered a C.R.C.P 54(b) order to allow appeal.

Western alleges three grounds for reversal: (1) the bond covering "business of motor vehicle dealers" does not apply when the subject matter of the action concerns mobile homes; (2) if the bond is applicable, there is no evidence in the record to support a finding of the surety's liability; and (3) the findings of the bankruptcy court are not binding on Western because it was not a party to the bankruptcy proceedings.

■ Although the bond was furnished in 1975, the language contained therein expressly incorporates C.R.S. 1963, 13–11–1 et seq., as amended. A surety is entitled to have its contract construed according to the plain meaning of its terms. *See People ex rel. Western Acceptance Co. v. Southern Surety Co.*, 76 Colo. 141, 230 P. 397 (1924). Thus, the issue as to whether the mobile home transactions are covered under the surety contract is governed by C.R.S. 1963, 13–11–1 et seq., as amended.

The statute underlying the bonds, 1971 Perm. Supp., C.R.S. 1963, 13–11–11, provides that prior to the issuance of a motor vehicle dealer license, the applicant for such license must procure a corporate surety bond conditioned on the same terms as the bond furnished by Western. This section specifically states that "one of the purposes of said bond is to provide the reimbursement for any loss or damage suffered by any person by reason of the issuance of a certificate of title by a motor vehicle dealer. . . ."

It is true that the definitions designated for use in the article entitled "Dealing in Motor Vehicles," are consistent with Western's contention. That is, 1971 Perm. Supp., C.R.S. 1963, 13–11–2, provides in pertinent part:

"(4)(a) 'Motor vehicle dealer' means any person who, . . . is engaged wholly or in part in the business of selling new or new and used motor vehicles . . ."

"(2) 'Motor Vehicle' means every vehicle intended primarily for use and operation on the public highways . . . ."

■ However, C.R.S. 1963, 13–6–11, provides, *inter alia*, that upon *sale* by a dealer of a new motor vehicle the dealer must deliver to the buyer the requisite documents to enable the buyer to obtain a certificate of title, and the definition of motor vehicle used in this section includes "trailer coaches" or mobile homes. *See* C.R.S. 1963, 13–6–2(2); 1971 Perm. Supp., C.R.S. 1963, 13–1–1(10). Thus, the 1963 act contemplates that the business of a motor vehicle dealer includes selling mobile homes. *See State v. Modern Trailer Sales, Inc.*, 175 Colo. 296, 486 P.2d 1064 (1971). In addition, since indemnification of losses sustained "by reason of the issuance of a certificate of title by a motor vehicle dealer" is one of the purposes behind the bond requirement, *see* 1971 Perm. Supp., C.R.S. 1963, 13–11–11, and motor vehicle dealers provide the equivalent of certificates of title for mobile homes, *see* C.R.S. 1963, 13–6–11, the purpose of the bond necessarily includes indemnification for mobile home transactions.

■ Western argues that *Shaw v. Aurora Mobile Homes & Real Estate, Inc.*, 36 Colo. App. 321, 539 P.2d 1366 (1975) mandates the opposite conclusion. We disagree. In *Shaw*, the court held that a surety bond furnished to a motor vehicle dealer did not cover a mobile home transaction. However, *Shaw*, is inapposite because the court was construing a bond issued pursuant to the 1973 Colorado Revised Statutes which substantially changed the relevant statutory definitions. *See* § 42–1–102(82), C.R.S. 1973.

Western also contends that the court erred by finding that the record supported liability on the bond. We disagree.

■ The record before the court on Fuqua's motion for summary judgment consisted primarily of the bankruptcy court's findings and judgment. Western was not a party to the proceeding; however, its principal initiated and participated in that action. Accordingly, evidence of the bank-

ruptcy order is conclusive against the principal and is *prima facie* evidence against the surety. *See American Surety Co. v. Morris*, 78 Colo. 504, 242 P. 983 (1923). And, since Western failed to respond to the motion for summary judgment, by affidavit or otherwise, there exists no genuine issue as to the material facts as found by the bankruptcy court. *See Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972).

The bankruptcy court findings establish the principal's intentional scheme to defraud Fuqua through a series of fraudulent representations. Although the bankruptcy court specifically declined to address the claim of fraud in obtaining the mobile homes, the findings, nevertheless, set forth the principal's fraudulent acts evidenced by its numerous attempts to avoid paying Fuqua after delivery of the mobile homes. Thus, there exists no genuine issues of material fact as to: (1) the principal's fraudulent representations; (2) Fuqua's damages caused thereby; and (3) the surety's liability on the bond.

Judgment affirmed.

SMITH and KELLY, JJ. concur.