**WESTERN SURETY COMPANY,**
**Plaintiff–Appellant,**

v.

**Iris SMITH, Basin Operations, Melvin Wolf, Elaine Wolf, and Danella Construction Corporation of Colorado, Inc., Defendants–Appellees.**

No. 94CA0262.

Colorado Court of Appeals,
Div. V.

July 27, 1995.

Rehearing Denied Sept. 28, 1995.

Certiorari Denied April 8, 1996.

---

* Sitting by Assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1994 Cum.Supp.).

Rothgerber, Appel, Powers & Johnson, Patrick Q. Hustead, Michael D. Plachy, Denver, for plaintiff-appellant.

Davis, Graham & Stubbs, L.L.C., William A. Bianco, Mark P. Urban, Denver, for defendants-appellees Iris Smith, Basin Operations, Melvin Wolf and Elaine Wolf.

Weinberger & Kanan, P.C., Thomas L. Kanan, Denver, for defendant-appellee Danella Const. Corp.

Opinion by Judge ROY.

In this interpleader action, plaintiff, Western Surety Company (Western), appeals the summary judgment entered in favor of defendants, Iris Smith, Basin Operations, Melvin Wolf, Elaine Wolf, and Danella Construction Corporation of Colorado, Inc., determining that each defendant may recover up to the face amount on two motor vehicle dealer bonds issued by Western. We reverse and remand for additional proceedings.

On October 15, 1991, Western issued a motor vehicle dealer bond, expiring June 30, 1992, in the amount of $30,000 to Centennial Motors Company. The bond was renewed by issuance of a continuation certificate on July 1, 1992, expiring June 30, 1993. The continuation certificate acted, in effect, as a separate bond covering the subsequent period also in the amount of $30,000 and incorporated the terms and conditions of the initial bond. The initial bond and the continuation

certificate are referred to herein as "the bonds."

Approximately 50 persons or businesses asserted claims against Western which, collectively, far exceeded the amounts Western contends are available under the bonds. As a consequence, Western filed this interpleader action and deposited $60,000 in the registry of the court.

In the trial court, defendants, the responding claimants, argued that, under the plain language of the bonds, Western was obligated to pay up to $30,000 for each claim. The trial court, while noting that the statute under which the bonds were issued permitted a surety to limit its aggregate liability as to each bond to $30,000, found that the language used in the bonds was more expansive than the statute and concluded that each defendant was entitled to recover damages up to the face amount of the applicable bond and entered summary judgment in favor of defendants. As a consequence of this ruling, the trial court dismissed the interpleader action, and this appeal followed.

The sole issue on appeal is whether the trial court erred in determining that the aggregate liability of Western was up to $30,000 per claim. We conclude that Western's aggregate liability for all claims under each bond is $30,000. Hence, we reverse and remand the cause to the trial court to reinstate the interpleader action.

The bonds provide in pertinent part as follows:

Centennial Motor Co., Inc. . . . as Principal and the WESTERN SURETY COMPANY . . . as Surety, are held and firmly bound unto the State of Colorado to indemnify any and all persons, firms and corporations for any loss suffered by reason of violation of the conditions hereinafter contained, in the penal sum of Thirty thousand and no/100 ($30,000.00) DOLLARS . . .

. . . .

Principal . . . shall faithfully observe and comply with all the requirements of the laws of the State of Colorado, respecting the licensing of dealers, being Title 12, Article 6, Colorado Revised Statutes 1973, as amended, and indemnify any and all persons, firms and corporations for any loss suffered by reason of the fraud or the fraudulent representations made, or through the violation of any of the provisions of said Title 12, Article 6, Colorado Revised Statutes 1973, as amended, and shall pay all judgments and costs adjudged against said Principal on account of fraud or fraudulent representations and for any violation or violations of said Article during the time of said license . . .

Defendants assert that the plain language of the bonds supports their construction that Western is liable on the bonds on a per claim basis. They argue that the use of the language "to indemnify any and all persons . . . for any loss suffered . . . in the penal sum of $30,000" together with the language that Western "shall pay all judgments and costs adjudged against said Principal" goes beyond the statutory requirements and is not limited or qualified. In support of this view, defendants rely on *Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich,* 668 P.2d 557 (Utah 1983) in which the Utah Supreme Court found identical language unambiguous and held the sureties liable to the extent of the bond amount on a per claim basis. We are not persuaded.

■ A surety bond is to be interpreted according to the standards which govern the construction of contracts in general. A fundamental principle is that a bond, like other contracts, should be construed to give effect to the intent of the parties. To ascertain that intent, a court should look to the bond and other instruments to which the bond refers. *Powder Horn Constructors, Inc. v. City of Florence,* 754 P.2d 356 (Colo.1988).

■ While there is ample evidence in the record with respect to Western's understanding and intent upon entering the contract, there is no evidence in the record with respect to the understanding and intent of Centennial Motors Company.

The parties cannot agree as to the bond's meaning with respect to the issue presented here. We conclude that the terms of the bonds are, at best, uncertain.

In *General Insurance Co. v. City of Colorado Springs,* 638 P.2d 752 (Colo.1981), our supreme court construed a performance bond for construction of improvements. The issue was whether the bond in question was a surety bond or a penal bond. The answer determined whether the bonding company was required to pay the face amount of the bond upon the occurrence of the event insured against or the bond company was required to pay the actual damages incurred to the extent of the bond.

With respect to the interpretation of the bond, the court stated:

A court must interpret the language of the bond in accordance with the intent of the parties, which generally is to be determined from the language of the instrument itself. . . . However, where the meaning of an instrument is uncertain, extrinsic evidence may be utilized to determine contractual intent. . . .

Under these circumstances it is appropriate to look to the legislation pursuant to which the bond was issued in order to determine the nature of the contractual obligation. . . . The determination of the character of the bond, as enlightened by the legislative enactment giving rise to its issuance, is a question of law. . . . Given the existence of a specific legislative requirement for a bond, it is not unreasonable to assume that the principal purchased the bond and the surety issued it in order to accomplish the objectives outlined by the lawmaking body in requiring this form of security as a condition of performance.

*General Insurance Co. v. City of Colorado Springs, supra,* 638 P.2d at 757; *see also CPS Distributors, Inc. v. Federal Insurance Co.,* 685 P.2d 783 (Colo.App.1984) (court held that the statutes pursuant to which a public works bond was written must be examined to determine the extent of the surety's obligation on the bond).

One of the express purposes of the motor vehicle dealer licensing statutes is to protect consumers by requiring dealers to provide funds from which a person may obtain reimbursement for damages caused by fraud or fraudulent representations of the dealer. *See* §§ 12–6–101(1)(c) & 12–6–111, C.R.S. (1994 Cum.Supp.). Prior to July 1, 1992, § 12–6–111 provided for reimbursement for "any loss or damage suffered by any person."

Western issued the bonds to satisfy Centennial Motors Company's obligation under § 12–6–111 to procure and file with the motor vehicle licensing board "evidence of a savings account, deposit, or certificate of deposit . . . or a good and sufficient bond" before the board will issue it a motor vehicle dealer's license. The bond makes specific reference to the statute.

The bond language closely tracks the language of the statute. The difference arises because the pre-amended version of the statute provided that "any person" may seek reimbursement for a loss, and the bond states "any and all persons." However, both the statute and the bonds use the phrase "any loss" when describing what may be compensated. We do not perceive any significant difference between the language "any and all persons" and "any person" in this context.

It is our view that § 12–6–111, in effect prior to July 1, 1992, limited the aggregate liability of an insurer to an amount equal to the amount required by the statute. A surety could, of course, bind itself to a greater aggregate amount if it so intended. We conclude, however, that, under an agreement closely tracking the statute as does the bond at issue here, the aggregate liability of a surety equals the amount required by statute.

■ Contrary to defendants' contention, the General Assembly did not, in our view, intend that the amount of funds available for reimbursement should vary depending on whether the security was in the form of a bond or cash alternative. Our interpretation is supported by the requirement in § 12–6–111 that a pool of funds be available from which a person may seek reimbursement for damages resulting from fraud or fraudulent representations of a dealer. Furthermore, § 12–6–111 explicitly incorporated § 11–35–101, C.R.S. (1987 Repl.Vol. 4B) which set forth the requirements for cash alternatives to a bond and provided that "[t]he aggregate

liability of the bank or savings and loan association shall in no event exceed the amount of the deposit."

As is apparent, the cash alternative statute creates only a limited fund from which all defendants must share. Section 11–35–101. Without more specific language, it would be anomalous to hold that the statute contemplated the creation of different sized funds depending on the form of security. *See Smith v. Zufelt*, 880 P.2d 1178 (Colo.1994) (there is a presumption that the General Assembly intends a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent or leads to an absurd result will not be followed); § 2–4–201, C.R.S. (1980 Repl.Vol. 1B).

In addition, if an applicant chooses to use a bond to satisfy the statutory security requirement, the bond instrument must be approved as to form by the state attorney general. The bonds issued by Western, with minor variations not relevant here, mirrored the language of a standard form motor vehicle dealer's license bond prepared by the attorney general. Defendants' contention to the contrary notwithstanding, we conclude that we may consider such standard form in our analysis here. It is apparent that the standard form was designed to satisfy the statute and expedite the approval process. There is nothing in the record to indicate that the attorney general intended to create any liability or exposure beyond that required by the statute, and some evidence from which the opposite inference can be drawn.

■ We are cognizant that, effective July 1, 1992, the same day the "second" bond here was issued, § 12–6–111 was amended to provide that "[t]he aggregate liability of the surety for all transactions shall not exceed the amount of the bond, regardless of the number of claims or claimants." We also are aware of the presumption that when the General Assembly amends a statute it intends to change the law. *Rickstrew v. People*, 822 P.2d 505 (Colo.1991); *In re Estate of Haddan*, 874 P.2d 1081 (Colo.App.1994). Here, however, the amendment was enacted during a sunset review of the motor vehicle dealer's licensing law, and what little legislative histo-

ry exists indicates that the amendment was intended to clarify, not amend, the statute. *See* Hearing on Senate Bill 92–88 before the Senate Committee on Transportation, 63rd General Assembly (February 4, 1992) (testimony of Robert Ferm, representative of American Insurance Association and Western Surety Company).

Therefore, we hold that Western Surety is liable only to the extent of the face amount of the bonds, or $30,000 for each bond.

■ Insofar as defendants failed to file a cross-appeal the issues they contend we must address if we reverse the judgment are not properly before us, and we will not consider them here. *See Robertson v. City & County of Denver*, 874 P.2d 325 (Colo.1994); *Hoffman v. Hoffman*, 872 P.2d 1367 (Colo.App. 1994).

The judgment is reversed and the cause is remanded to the trial court to reinstate the interpleader action.

RULAND and ROTHENBERG, JJ., concur.