**James EDMONDS, Plaintiff–Appellee,**

v.

**WESTERN SURETY COMPANY,**
**Defendant–Appellant.**

No. 97CA0679.

Colorado Court of Appeals,
Div. IV.

June 11, 1998.

Rehearing Denied July 30, 1998.

Zarlengo & Kimmell, P.C., Thomas J. Kimmell, Denver, for Plaintiff-Appellee.

The Hustead Law Firm, P.C., Patrick Q. Hustead, Bennett L. Cohen, Giovanni M. Ruscitti, Englewood, for Defendant-Appellant.

Opinion by Judge CASEBOLT.

In this action seeking recovery against a surety under a motor vehicle dealer bond, defendant, Western Surety Company (surety), appeals the summary judgment entered in favor of plaintiff, James Edmonds. We modify in part, affirm in part, reverse in part, and remand with directions.

The facts are not in dispute. Edmonds consigned a vehicle to Colorado Auto Buying Service (CABS) for sale. After CABS sold the vehicle, it tendered to Edmonds a check for $10,400, which was dishonored twice. Edmonds then brought an action against CABS seeking damages under §13–21–109, C.R.S.1997, which provides for recovery of damages for checks not paid upon presentment.

The trial court awarded Edmonds three times the value of the check plus costs and attorney fees. The court further awarded interest at 8% per annum, to accrue from the date of the judgment until paid. The total amount of the judgment exceeded $30,000.

Surety had issued a motor vehicle dealer bond to CABS in the amount of $30,000 pursuant to §12–6–111, C.R.S 1997, which requires a bond as a condition of licensure. Section 12–6–111(2)(a), C.R.S.1997, requires automobile dealers to furnish the bond to reimburse a retail consumer for any loss or damage suffered because of a violation of the Automobile Dealers Act.

CABS failed to pay the Edmonds judgment and declared bankruptcy. Edmonds then joined surety as a defendant in the action in order to enforce the bond.

Both Edmonds and surety filed motions for summary judgment. In its motion, surety conceded liability for $10,400, the portion of the award that it considered to be Edmonds' actual loss. Edmonds claimed that he was entitled to receive the entire amount of the judgment against CABS up to the face amount of the bond, plus prejudgment interest.

The trial court agreed with Edmonds and entered summary judgment against surety for $30,000. Concluding that surety could not be held liable for an amount that would exceed the face amount of the bond, the court declined to address whether surety was also liable for attorney fees or costs. The court did not address whether prejudgment interest was to be awarded against surety.

In a postjudgment motion "to clarify order as to prejudgment interest," Edmonds again requested an award of prejudgment interest on the $30,000 judgment against surety. Over surety's objection, the court granted Edmonds' motion, awarding interest from the date that Edmonds initially had made demand on surety to the date of judgment, at the rate of 8% per annum.

## I.

Surety first contends that it is liable under the terms of the bond only for the actual damages sustained by Edmonds, *i.e.*, the face amount of the check, and that the trial court therefore erred in awarding the full treble damage amount that Edmonds had obtained against CABS. We agree.

## A.

A surety bond is a written contract guaranteeing performance of an obligation by another and should be interpreted according to the standards that govern the construction of contracts in general. Hence, a court must interpret the language of the bond in harmony with the intent of the parties, which generally is to be determined from the language of the instrument itself. *General Insurance Co. of America v. City of Colorado Springs*, 638 P.2d 752 (Colo.1981).

A surety is entitled to have its contract construed according to the plain meaning of its terms. *Fuqua Homes, Inc. v. Western Surety Co.*, 44 Colo.App. 257, 616 P.2d 163 (1980). In ascertaining the intent of the parties, a court must consider the bond and other instruments to which the bond refers, including any statutes. *Western Surety Co. v. Smith*, 914 P.2d 451 (Colo.App. 1995).

As pertinent here, the bond states that surety is bound "to indemnify persons ... for any loss suffered by reason of violation of the conditions hereinafter contained, in the penal sum of $30,000...." The bond thereafter sets forth the conditions that will trigger the obligation to indemnify for the loss suffered, stating:

> The condition of this obligation is such that ... if said Principal ... shall faithfully observe and comply with all the requirements of the laws of the State of Colorado respecting such licensing dealers ... and indemnify persons ... for any loss suffered by reason of the fraud or the fraudulent representations made, or through the violation of any of the provisions of [the Act], and shall pay judgments and costs adjudged against said Principal on account of fraud or fraudulent representations and

for any violation ... of [the Act] ... then the above obligation [shall] be void, otherwise [it shall] be and remain in full force and effect.

In essence, the bond states that surety will pay for any loss suffered if one of the conditions in the bond is triggered. Because CABS did not pay the judgment rendered against it, at least one of the bond conditions is satisfied; hence, surety became liable to indemnify Edmonds for "any loss suffered."

The question becomes, therefore, whether the "loss suffered" by Edmonds includes the treble damage award or, instead, the face amount of the check. This analysis, however, does not proceed in a vacuum. Rather, it must account for the fact that the obligation is a legally mandated bond; that is, one that is statutorily required. *See* §12–6–111, C.R.S.1997; *Western Surety Co. v. Smith, supra;* Restatement (Third) of Suretyship & Guaranty §71 (1995).

When a bond is legally mandated, the obligation does not include any penalties imposed on the principal obligor beyond actual losses suffered by the obligee for failure of the principal to fulfill the underlying obligation, unless the secondary obligation so provides. Restatement (Third) of Suretyship & Guaranty §73 comment a (1995). The scope of this general rule has been addressed in several cases.

*United Pacific Insurance Co. v. Berryhill*, 620 So.2d 1077, 1079 (Fla.Dist.Ct.App.1993) involved a motor vehicle dealer bond and a statute that required the bond to provide for recovery of "any loss or damage" which a person "shall sustain" as a result of odometer tampering. The court stated that the clear meaning of the quoted words suggested that only actual damages or losses could be recovered against the bond. Accordingly, it held that treble damages recovered against the principal obligor were not recoverable against the surety.

Similarly, in *Tomlinson v. Camel City Motors, Inc.*, 330 N.C. 76, 408 S.E.2d 853, 855 (1991), a statute provided for recovery from a surety of "loss or damages" suffered by a purchaser as a result of a motor vehicle

dealer's actions. The court held that a purchaser was able to recover only for compensatory damages against the motor vehicle dealer bond that had been obtained pursuant to the statute. Hence, it reversed the award of treble damages against the surety. *See Ferris v. Haymore*, 967 F.2d 946 (4th Cir. 1992); *Darr v. Long*, 210 Neb. 57, 313 N.W.2d 215 (1981); *Butler v. United Pacific Insurance Co.*, 265 Or. 473, 509 P.2d 1184 (1973); *see also State Bank of Monte Vista v. Brennan*, 7 Colo.App. 427, 43 P. 1050 (1896) (sureties on sheriff's official bond cannot be held liable for treble damages).

Here, there is no doubt that the treble damages recovery includes a penalty. *See The Group, Inc. v. Spanier*, 940 P.2d 1120 (Colo.App.1997) (if the maker of a check fails to make timely payment, treble damages provision in §13–21–109(2), C.R.S.1997, creates a penalty and is not intended merely to compensate the holder or assignee of a dishonored check); *see also Lexton–Ancira Real Estate Fund v. Heller*, 826 P.2d 819 (Colo. 1992) (treble damages and punitive damages serve similar purposes; treble damages serve to punish, deter, and promote private enforcement of a statute).

Accordingly, we hold that the bond does not obligate surety to indemnify Edmonds for treble damages. Correspondingly, Edmonds is limited here to recovery of the face amount of the check.

## B.

■ Edmonds, nevertheless, argues that the bond encompasses damages beyond actual damages. As support for this contention, Edmonds relies on the language in the bond stating that surety agrees to indemnify in the "penal sum" of $30,000. We are not persuaded.

Many legally mandated bonds mention a specified "penal sum"; however, this phrase is generally held to be a cap on the surety's liability rather than an agreement to be liable for penalties imposed on the principal obligor for failure to fulfill the underlying obligation. Thus, "the fact that the secondary obligation provides for a 'penal sum' does not in itself mean that the secondary obli-

gation includes penalties imposed on the principal obligor." Restatement (Third) of Suretyship & Guaranty §73 comment b (1995).

## C.

■ Edmonds further contends that the bond here is a "penal" bond and, as such, the entire amount of the bond is subject to forfeiture regardless of actual damages proved. We again disagree.

The significance of construing a contractual obligation as either a penalty bond or an indemnity bond is critical to the obligee's right to recover against the principal and the surety without proof of damage. If the surety bond is construed as a penalty bond, the obligee may recover the full amount of the bond upon nonperformance regardless of damage. On the other hand, if a bond is an indemnity bond, the obligee's right of recovery will be limited to the actual damages sustained, not to exceed the face amount of the bond. *General Insurance Co. v. City of Colorado Springs, supra. See Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356 (Colo.1988) (fn.12).

Here, the bond expressly states that the obligation is one of indemnification. It provides that the principal and surety are bound "to indemnify persons ... for any loss suffered...." The same language appears in the description of the conditions under which the secondary obligation of the surety is triggered.

In addition, §12–6–111(2)(a), C.R.S.1997, requires automobile dealers to furnish a bond "for the reimbursement for any loss or damage...." Reimbursement in this context connotes indemnity, not a penalty.

Therefore, we reject Edmonds' assertions that seek to expand surety's liability beyond the actual losses he sustained.

## II.

Because the trial court had already held surety liable for the full amount of the bond when it imposed liability for the treble damages, it declined to address whether surety could be held liable for attorney fees and

costs incurred by Edmonds in pursuing the claim against CABS. Inasmuch as our holding above modifies the judgment against surety such that Edmonds' recovery for actual damages is less than the face amount of the bond, this issue is not moot, and we address it.

■ We reject surety's argument that it is not liable to Edmonds for the attorney fees and costs incurred in Edmonds' pursuit of the damage award against CABS.

■ As a general rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action. This reasoning is based on the American rule, which requires each party in a lawsuit to bear its own legal expenses. *Bernhard v. Farmers Insurance Exchange*, 915 P.2d 1285 (Colo.1996).

Section 13–21–109, C.R.S.1997, under which Edmonds recovered the judgment against CABS, provides that: "In any civil action brought under this section, the prevailing party may recover court costs and reasonable attorney fees." This language undoubtedly imposes liability on the maker of a dishonored check for the holder's attorney fees expended in pursuit of the damage award. *See The Group, Inc. v. Spanier, supra.* Indeed, the trial court here awarded attorney fees and costs in favor of Edmonds against CABS. However, §13–21–109 does not address secondary obligations.

As noted previously, the bond terms require surety to indemnify Edmonds for "any loss suffered," and §12–6–111(2)(a) states that the purpose of the bond is to provide for the reimbursement for "any loss or damage suffered by any retail consumer."

It is true, as surety argues, that costs and attorney fees are not ordinarily damages or losses that are suffered as a direct result of the conduct of the principal obligor. *See Ferris v. Haymore, supra* (attorney fees and costs recovered against principal obligor not recoverable as "loss or damages suffered" under bond); *Knecht, Inc. v. United Pacific Insurance Co.*, 860 F.2d 74 (3d Cir.1988) (attorney fees not recoverable on bonds which provide that claimants can sue for sums "as may be justly due").

■ However when, as here, a statute expressly authorizes the recovery of attorney fees against the principal obligor on the underlying claim, such sums qualify as a "loss suffered" within the meaning of the bond terms.

Our conclusion is buttressed by *National Union Fire Insurance Co. v. Denver Brick & Pipe Co.*, 162 Colo. 519, 427 P.2d 861 (1967). There, a bond obligated the principal obligor and surety to "fully indemnify and save harmless the obligees from all cost, damage and expense by reason of the Principal's default." The supreme court noted that this language was broad enough to cover attorney fees that resulted from the breach of the underlying contract by the principal and were therefore indemnifiable under the bond. *See also Key Savings & Loan Ass'n v. Travelers Indemnity Co.*, 32 Colo.App. 358, 513 P.2d 737 (1973) (attorney fees expended by obligee relative to action brought by third-party lien claimant were recoverable under bond, while fees incurred by obligee to enforce liability of surety were not).

Surety argues that *National Union* and *Key Savings* are distinguishable. It contends that these cases should be viewed as examples of the acknowledged exception to the American rule that allows recovery of attorney fees when a party's wrongful act proximately causes the wronged party to become engaged in litigation with others. *See Publix Cab Co. v. Colorado National Bank of Denver*, 139 Colo. 205, 338 P.2d 702 (1959). In contrast to the situation here in which the obligee has brought a direct claim against surety, those cases, surety contends, involved plaintiffs who recovered attorney fees against sureties where a breach of contract forced the plaintiffs to maintain or defend suits with third persons.

We agree that the facts here are different; however, the *National Union* court, in granting attorney fees, specifically analyzed the bond language and allowed recovery under its contract terms. It did not invoke the "third party" exception to the American rule.

Accordingly, we reject surety's contention.

### III.

Finally, surety argues that the trial court erred by awarding prejudgment interest against it because Edmonds' motion to amend the judgment was not timely filed, and because surety did not "wrongfully withhold" the $10,400 portion of the judgment that it owed to Edmonds. We disagree.

### A.

Surety first contends that, because Edmonds did not seek to amend the judgment within the time allowed under C.R.C.P. 59, the trial court could not award such interest. However, when the entitlement to interest is mandatory and a trial court intends to award interest at the time it enters judgment, but inadvertently fails to do so, the failure to include interest is an oversight or omission and falls squarely within C.R.C.P. 60(a), which allows a judgment to be amended at any time to correct a clerical error. *Crosby v. Kroeger,* 138 Colo. 55, 330 P.2d 958 (1958); *Jennings v. Ibarra,* 921 P.2d 62 (Colo.App.1996). *See Bainbridge, Inc. v. Douglas County School District RE–1,* 1998 WL 281972 (Colo.App. No. 97CA0895, May 28, 1998) (judgment creditor whose claim for post-judgment interest falls within the wording of statute is entitled to interest, and need not obtain an additional judgment or a modification of a previous judgment specifying that entitlement).

In an action to recover on a vehicle dealer bond, interest is a creature of statute and is due and collectable just as much as is the principal amount due under the bond. *Massachusetts Bonding & Insurance Co. v. State ex rel. Mallin,* 141 Colo. 259, 347 P.2d 507 (1959). And, §5–12–102 (3), C.R.S.1997, makes the imposition of interest mandatory, not discretionary.

Here, in the original proceeding against CABS, the trial court determined that CABS owed interest on the entire award against it. In Edmonds' motion for summary judgment against surety, he requested prejudgment interest on any amount due. Considering that the trial court in fact amended its judgment to include prejudgment interest, and that the same court had previously awarded interest against CABS, we conclude that the trial court intended to award prejudgment interest, but inadvertently failed to do so in its original judgment against surety.

Accordingly, we reject surety's contention.

### B.

Surety also asserts that it does not owe prejudgment interest because it has at all times "stood ready" to pay Edmonds $10,400. We are not persuaded.

Section 5–12–102(1)(a), C.R.S.1997, provides, among other things, that when money or property has been wrongfully withheld, creditors shall receive interest. Here, the trial court awarded prejudgment interest at the rate of 8% per annum from the date of demand for payment from surety to the date of judgment against it. Although the court did not so specify, it appears that the court based this award on the theory of wrongful withholding.

Surety asserts that, because it at all times "stood ready" to pay Edmonds the amount of actual loss that he had sustained, it did not wrongfully withhold funds within the meaning of §5–12–102. However, even if we assume, without deciding, that "standing ready" constitutes a cognizable defense to a claim for interest because of wrongful withholding of funds, there is no evidence in the record to support surety's assertion.

Accordingly, we reject surety's contention. *See Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983)(party asserting error must present a record from which error can be discerned); *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991) (bare statements in a party's brief are not a substitute for what must be confirmed by the record).

The judgment is modified to award Edmonds the sum of $10,400 against surety. The denial of recovery of attorney fees and costs is reversed, and the cause is remanded to the trial court to determine the amount of fees and costs allocable to Edmonds' recovery of the face amount of the check. The award of prejudgment interest, as modified

to reflect the principal debt of surety in the amount of $10,400, at the same rate, and for the same period, as indicated by the trial court, is affirmed.

RULAND and ROY, JJ., concur.