2014 COA 29

Devin MENDOZA and Natalie Gonzales,
Plaintiffs–Appellants,

v.

PIONEER GENERAL INSURANCE
COMPANY, Defendant–
Appellee.

Court of Appeals No. 13CA0489

Colorado Court of Appeals,
Div. A.

Announced March 13, 2014

City and County of Denver District Court No. 12CV2284, Honorable J. Eric Elliff, Judge.

The Wynkoop Law Office, PLLC, Richard B. Wynkoop, Susan G. Thomas, Wheat Ridge, Colorado, for Plaintiffs–Appellants

Pendleton, Wilson, Hennessey & Crow, P.C., L. Jay Labe, Denver, Colorado, for Defendant–Appellee

Opinion by CHIEF JUDGE LOEB

¶ 1 In this case to recover on a surety bond issued by defendant Pioneer General Insurance Company (Pioneer), plaintiffs, Devin Mendoza and Natalie Gonzales, appeal the district court's order and judgment denying their motion seeking a declaratory judgment. We reverse and remand with directions.

¶ 2 Plaintiffs requested that the court enter a judgment declaring that a prior judgment they obtained against a motor vehicle dealer, Fitzgerald Automotive Group (Fitzgerald), under section 6–1–708, C.R.S.2013, of the Colorado Consumer Protection Act (CCPA) constituted a determination of fraud or fraudulent representation sufficient to allow plaintiffs to recover on the surety bond obtained by Fitzgerald from Pioneer, pursuant to section 12–6–111, C.R.S.2013 (the Motor Vehicle Dealer Bond Statute).

¶ 3 The district court held that, while a CCPA violation could constitute a determination of fraud or fraudulent representation, the court did not have a sufficient record before it to determine whether or not there was a final determination of fraud or fraudulent representation to satisfy section 12–6–111(2)(b), C.R.S.2013. We reverse and conclude that, as a matter of law, the county court judgment obtained by plaintiffs, finding that Fitzgerald had committed a deceptive trade practice by violating section 6–1–708(1)(a)(I), was a final determination of fraud made by a court of competent jurisdiction, which was sufficient to satisfy section 12–6–111(2)(b).

## I. Background and Procedural History

¶ 4 In March 2009, Mendoza and Gonzales brought an action in Denver County Court against Fitzgerald, alleging, as pertinent here, a claim that Fitzgerald violated section 6–1–708, which is a provision of the CCPA that expressly prohibits motor vehicle dealers from engaging in certain specified deceptive trade practices. Plaintiffs asserted that Fitzgerald violated (1) section 6–1–708 (1)(a)(I), which prohibits a motor vehicle dealer from falsely guaranteeing to a consumer that financing for the purchase of a vehicle has been approved if such approval is not final; and (2) section 6–1–708(1)(a)(III), which prohibits a dealer from refusing to refund a consumer's down payment when financing was not approved after the dealer falsely guaranteed that financing was approved and final. It appears to be undisputed that plaintiffs did not allege a claim for common law fraud in their county court action.

¶ 5 After a trial to a jury, the jury found in favor of plaintiffs on their CCPA claim[1] and also found in a special interrogatory that Fitzgerald had engaged in bad faith conduct under section 6–1–113(2)(a)(III), C.R.S.2013, which allows for an award of treble damages. The county court entered judgment on the jury's verdict in favor of plaintiffs and against Fitzgerald for actual damages in the amount of $3500 and trebled that amount, consistent with the jury's finding of bad faith. The court also awarded plaintiffs attorney fees and costs of $15,475 and $436.61 respectively.

¶ 6 Thereafter, Fitzgerald apparently ceased operations, and plaintiffs were not able to recover on their judgment directly from Fitzgerald. Accordingly, they brought this action against Pioneer in Denver District Court, requesting, as relevant here, that the court enter a declaratory judgment that the motor vehicle dealer's licensing bond required by section 12–6–111 "is available to consumers who have been damaged by car dealers that commit deceptive trade practices as prohibited in [section 6–1–708 of the CCPA] and further find that the bond is applicable to costs and attorney fees incurred by the consumer...." After briefing, the district court entered an order denying plaintiffs' motion. The court reasoned that, without the record from the underlying county court action, or any explicit finding of fraud or fraudulent representation by the jury, the court could only "attempt to make a finding of fraud based on the factual allegations of the underlying case." The court concluded that doing so would be improper.

¶ 7 On appeal, plaintiffs contend the district court erred in denying their motion for declaratory judgment because, they assert, the county court's judgment was a final determination by a court of competent jurisdiction of fraud or fraudulent representation that was sufficient to satisfy section 12–6–111(2)(b). We agree.

## II. Discussion

¶ 8 Plaintiffs contend that sections 6–1–708 and 12–6–111 are part of a legislative and regulatory scheme designed to protect consumers from fraud and should be read together to accomplish that legislative purpose. Pioneer contends that plaintiffs did not allege a claim for fraud against Fitzgerald, the jury was never instructed on the elements of fraud, and the jury did not make any express findings that Fitzgerald engaged in fraud; hence, according to Pioneer, there was no "final determination by ... a court of competent jurisdiction, of fraud or fraudulent misrepresentation by the bond principal." We conclude that the county court's entry of judgment on the jury's verdict in favor of plaintiffs on their CCPA claim was a final determination that Fitzgerald had committed fraud, and therefore, the district court erred in denying plaintiffs' request for a declaratory judgment.

---

1. Plaintiffs did not designate the record from the county court action in this appeal or in the district court proceedings in this case. A copy of the jury instructions and verdict forms is, however, in the record on appeal. As discussed below, the record is unclear as to whether the jury found that Fitzgerald violated both sections 6–1–708(1)(a)(I) *and* 6–1–708(1)(a)(III) or just section 6–1–708(1)(a)(I).

## A. Standard of Review and Applicable Law

¶ 9 Once a trial court has accepted jurisdiction, we review its decision whether to enter a declaratory judgment for an abuse of discretion. *Troelstrup v. Dist. Court,* 712 P.2d 1010, 1012 (Colo.1986); *Saxe v. Bd. of Trs. of Metro. State Coll. of Denver,* 179 P.3d 67, 72 (Colo.App.2007). Where, as here, the issue is one of statutory interpretation, our review is de novo. *See Zab, Inc. v. Berenergy Corp.,* 136 P.3d 252, 254 (Colo.2006) ("Whether a trial court may exercise its discretion in granting declaratory relief under the [Colorado Uniform Declaratory Judgment Law] is a matter of statutory interpretation, which we review de novo."); *Wallin v. McCabe,* 293 P.3d 81, 83 (Colo.App.2011) (same).

¶ 10 The first goal of a court construing a statute is to ascertain and give effect to the intent of the General Assembly. Constructions that defeat the obvious legislative intent should be avoided. To determine the legislative intent, courts look first to the statutory language, giving words and phrases their plain and ordinary meaning. Although we must give effect to the statute's plain and ordinary meaning, the intention of the legislature prevails over a literal interpretation of the statute that would lead to an absurd result. *Showpiece Homes Corp. v. Assurance Co. of Am.,* 38 P.3d 47, 51 (Colo.2001).

¶ 11 We consider statutes as a whole in order to effectuate legislative intent, and we give consistent, harmonious, and sensible effect to all the statute's parts. *Colo. Dep't of Revenue v. Cray Computer Corp.,* 18 P.3d 1277, 1281 (Colo.2001). Statutes should not be read in isolation but together with all other statutes relating to the same subject or having the same general purpose, to the end that a statute's intent may be ascertained and absurd consequences avoided. *Huddleston v. Bd. of Equalization,* 31 P.3d 155, 159 (Colo.2001).

¶ 12 The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public. *Showpiece Homes,* 38 P.3d at 50–51. The CCPA's broad legislative purpose is to provide prompt, economical, and readily available remedies against consumer fraud. *Id.* at 51 (citing *W. Food Plan, Inc. v. Dist. Court,* 198 Colo. 251, 256, 598 P.2d 1038, 1041 (1979)). In interpreting the CCPA's language, courts should rely on the CCPA's broad deterrent purpose and scope. *Id.* " '[A]n expansive approach is taken in interpreting the CCPA in its entirety and interpreting the meaning of any one section by considering the overall legislative purpose.' " *Id.* (quoting *May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 973 n.10 (Colo.1993)).

¶ 13 Similarly, the purpose of the bond required by the Motor Vehicle Dealer Bond Statute is to "provide for the reimbursement for any loss or damage suffered by any retail consumer ...." § 12–6–111(2)(a), C.R.S. 2013; *see Sw. Capital Invs., Inc. v. Pioneer Gen. Ins. Co.,* 924 P.2d 1205, 1207 (Colo.App. 1996); *W. Surety Co. v. Smith,* 914 P.2d 451, 454 (Colo.App.1995) ("One of the express purposes of the motor vehicle dealer licensing statutes is to protect consumers by requiring dealers to provide funds from which a person may obtain reimbursement for damages caused by fraud or fraudulent representations of the dealer.").

## B. Relevant Statutory Law

¶ 14 Section 6–1–708 provides in pertinent part:

Motor vehicle sales and leases—*deceptive trade practice.*

(1) A person engages in a *deceptive trade practice* when, in the course of such person's business, vocation, or occupation, such person:

(a) Commits any of the following acts pertaining to the sale ... of a motor vehicle or a used motor vehicle:

(I) *Guarantees to a purchaser ... of a motor vehicle or used motor vehicle who conditions such purchase ... on the approval of a consumer credit transaction ... that such purchaser ... has been approved for a consumer credit transaction if such approval is not final. For purposes of this subparagraph (I), 'guarantee' means a written document or oral representation between the purchaser ... and*

*the person selling ... the vehicle that leads such purchaser ... to a reasonable good faith belief that the financing of such vehicle is certain.*

(Emphasis added.)

¶ 15 Section 12–6–111 provides in pertinent part:

Bond of licensee

(1) Before any motor vehicle dealer's ... license shall be issued by the board ... the said applicant shall procure and file with the board ... a good and sufficient bond with corporate surety thereon duly licensed to do business within the state, approved as to form by the attorney general of the state, and conditioned that said applicant *shall not practice fraud, make any fraudulent* representation, or violate any of the provisions of this part 1 that are designated by the board by rule in the conduct of the business for which such applicant is licensed....

(2) ...

(b) No corporate surety shall be required to make any payment to any person claiming under such bond until *a final determination of fraud or fraudulent representation* has been made by the board or by a court of competent jurisdiction.

(Emphasis added.)

## C.   Analysis

¶ 16 Plaintiffs contend that sections 6–1–708 and 12–6–111 should be read together to accomplish their mutual overarching legislative purpose of providing remedies for consumer fraud.   For the reasons set forth below, we agree.

¶ 17 At trial, plaintiffs asserted that Fitzgerald violated both sections 6–1–708(1)(a)(I) and 6–1–708(1)(a)(III), and the jury was instructed on the elements of both subsections. However, because we do not know whether the jury found that Fitzgerald violated *both* sections 6–1–708(1)(a)(I) *and* 6–1–708(1)(a)(III) or *just* section 6–1–708(1)(a)(I), we limit our analysis and holding to a discussion of section 6–1–708(1)(a)(I), in considering whether a jury verdict and judgment finding a violation of that subsection is a final determination of fraud that satisfies the requirements of section 12–6–111(2)(b).

■■■   ¶ 18 As a threshold matter, we note that section 6–1–708(1)(a)(I) does not expressly specify a requisite mental state for violation of that provision.   Some subsections of the CCPA do specify mental states, *see, e.g.,* § 6–1–105(1)(a), C.R.S.2013 (specifying a requisite mental state of knowingly); § 6–1–105(1)(f) (specifying a requisite mental state of either knows or should know); § 6–1–105(1)(ee) (specifying a requisite mental state of intentionally), while other subsections, like section 6–1–708(1)(a)(I), do not specify any mental state, *see, e.g.,* §§ 6–1–105(1)(d) and (1)(n).

¶ 19 However, in *General Steel Domestic Sales, LLC v. Hogan & Hartson, LLP,* 230 P.3d 1275, 1282 (Colo.App.2010), a division of this court concluded that "it simply is inconsistent for the General Assembly to have included a practice with no subjective intent element under the category of deceptive trade practices."   (Internal quotation marks and brackets omitted.)   The division in *General Steel* thus held that the General Assembly intended the deceptive trade practice of "bait and switch" advertising, set forth in section 6–1–105(1)(n), to include the element of intent to deceive, even though the language of that subsection did not expressly contain the word "intent."   *Id.* at 1282–83. Similarly, our supreme court has held that the CCPA provides an absolute defense for a misrepresentation caused by negligence or an honest mistake.   *Crowe v. Tull,* 126 P.3d 196, 204 (Colo.2006) (citing David Benjamin Lee, *The Colorado Consumer Protection Act: Panacea or Pandora's Box?,* 70 Denv. U.L.Rev. 141, 154–55 (1992)).   And, the supreme court has further articulated that a CCPA claim arises when a party either knowingly makes a misrepresentation or makes a false representation that has the capacity to deceive, unlike a breach of contract claim, which arises when one contracting party breaks a promise.   *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 148 (Colo.2003); *see also* John W. Grund, J. Kent Miller & David S. Werber, 7A Colo. Prac., *Personal Injury Torts & Ins.* § 37:7 (3d ed. 2013).

¶ 20 Accordingly, consistent with the reasoning in *General Steel*, we similarly conclude that section 6–1–708(1)(a)(I) contains, at the very least, the element of an intent to deceive. *See Gen. Steel*, 230 P.3d at 1282 ("Indeed, the element of intent is a critical distinction between actionable CCPA claims and those sounding merely in negligence or contract."); *see also Crowe*, 126 P.3d at 204 ("The crux of a CCPA claim is a deceptive trade practice, which, by definition, must be intentionally inflicted....").

¶ 21 We recognize that section 6–1–708 prohibits a *deceptive* trade practice but does not contain the word "fraud," while section 12–6–111 does not use the word "deceptive" but does require a final determination of fraud or fraudulent representation. We further recognize that neither section defines either the word "deceptive" or the word "fraud."

¶ 22 Thus, in light of our conclusion that the deceptive trade practice prohibited in section 6–1–708(1)(a)(I) requires, as a matter of law, an intent to deceive, we must determine whether the two statutory provisions at issue here, sections 6–1–708(1)(a)(I) and 12–6–111, should be read together and whether a jury's finding of a CCPA violation under section 6–1–708(1)(a)(I) is a final determination of fraud or fraudulent representation sufficient to satisfy section 12–6–111(2)(b).

1. The Motor Vehicle Dealer Bond Statute

¶ 23 Section 12–6–111(2)(b) requires that, before a corporate surety such as Pioneer will be required to make a payment on a bond, the motor vehicle dealer board or a court of competent jurisdiction must "make ... a final determination of fraud or fraudulent representation." [2] As noted, section 12–6–111 does not contain a definition of the word "fraud."

■ ¶ 24 As an initial matter, when the legislature defines a term in a statute, that definition governs. *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo.1998). However, where, as here, the statute does

not define a term, the word at issue is a term of common usage, and people of ordinary intelligence need not guess at its meaning, we may refer to dictionary definitions in determining the plain and ordinary meaning of the word. *See People v. Janousek*, 871 P.2d 1189, 1196 (Colo.1994) (referring to the dictionary definition of "deceit" to determine the plain and ordinary meaning of that word).

■ ¶ 25 *Webster's Third New International Dictionary* 904 (2002), defines fraud as "an instance or an act of trickery or *deceit* esp. when involving misrepresentation." (Emphasis added.) This definition equates "fraud" with "deceit." Furthermore, and contrary to Pioneer's argument, nothing in section 12–6–111(2)(b) indicates that the use of the word "fraud" in that section would require a determination that all of the elements of the tort of common law fraud be met. Rather, we conclude that "fraud," as used in section 12–6–111(2)(b), requires only a final determination consistent with the plain and ordinary meaning of that word. *See Edmonds v. W. Sur. Co.*, 962 P.2d 323, 325–26 (Colo.App.1998) (acknowledging that a plaintiff who recovers a judgment against a motor vehicle dealer under section 13–21–109, C.R.S.2013, which provides for recovery of damages for dishonored checks but does not contain the word "fraud," may, upon the dealer's failure to pay the judgment, collect actual damages against a surety who issues a bond under section 12–6–111).

2. Section 6–1–708(1)(a)(I)

■ ¶ 26 We next analyze the language in section 6–1–708(1)(a)(I), to determine whether a violation of that section constitutes a determination of "fraud," as we have defined it above.

¶ 27 The General Assembly clearly and expressly labeled a violation of section 6–1–708 as a *deceptive trade practice*. Although Pioneer is correct that section 6–1–708 does not expressly use the word "fraud," we must

**2.** Plaintiffs do not contend that the motor vehicle dealer board made a final determination of fraud or fraudulent representation here, and thus, that part of section 12–6–111(2)(b) is not at issue in

this appeal. The issue here is whether the county court's entry of judgment on the jury's verdict was a final determination of fraud or fraudulent representation.

analyze the word "deceptive" to determine whether a finding of a violation of section 6–1–708(1)(a)(I) is a finding of fraud.

¶ 28 In substance, section 6–1–708(1)(a)(I) provides that a motor vehicle dealer commits a deceptive trade practice when it makes a false representation to a potential purchaser of a motor vehicle that the financing for the vehicle is approved when, in fact, approval of such financing is not final and that furthermore, the false representation leads the purchaser to a reasonable good faith belief that financing is certain.

¶ 29 The jury instructions here set forth the exact language of section 6–1–708(1)(a)(I) and further stated that, in order to find that Fitzgerald violated the CCPA, the jury must find that Fitzgerald engaged in a deceptive trade practice. As discussed above, the jury instructions did not define the term "deceptive," nor did they contain the word "fraud." When jury instructions do not define a specific term, we presume that the jury applied the common meaning of the word, and we can determine the common meaning by looking at dictionary definitions. *See People v. Walden*, 224 P.3d 369, 379 (Colo.App.2009); *Lascano v. Vowell*, 940 P.2d 977, 982 (Colo.App.1996).

¶ 30 "Deceptive" and its corresponding noun, "deceit," are terms of common usage, and people of ordinary intelligence need not guess at their meaning. *See Janousek*, 871 P.2d at 1196 (referring to dictionary definitions to define "deceit" when the statute at issue did not define that term). *Webster's Third New International Dictionary* at 585 defines "deceptive" as "tending to deceive; having power to mislead." It further defines "deceit" as "1: the act or practice of deceiving (as by falsification, concealment, or cheating) ... 2a: an attempt to deceive: a declaration, artifice, or practice designed to mislead another: wily device: trick, *fraud*, b: any trick, collusion, contrivance, false representation, or underhand practice used to defraud another—see *Fraud*." *Id.* at 584 (emphasis added); *see Janousek*, 871 P.2d at 1196. Similar to the dictionary definition of fraud, this definition also states that fraud and deceit are synonymous. *See Gen. Steel*, 230 P.3d at 1282 ("Indeed, the element of

intent is a critical distinction between actionable CCPA claims and those sounding merely in negligence or contract.").

¶ 31 Because the jury found that Fitzgerald had engaged in the deceptive trade practice set forth in section 6–1–708(1)(a)(I), we conclude that, as a matter of law, the jury's finding (and the county court's entry of judgment on that finding) is a final determination of fraud for the purposes of section 12–6–111(2)(b).

¶ 32 This conclusion comports with the liberal construction the supreme court has given the CCPA. *See Showpiece Homes*, 38 P.3d at 51 ("[W]e must keep in mind the liberal construction we have given the CCPA in prior cases. There is no record of the proceedings leading to the passage of the CCPA; however, in interpreting the statute's language we have relied on the CCPA's broad deterrent purpose and scope." (citations omitted)). The supreme court has further held that the CCPA is "meant to work in tandem with other regulatory provisions in the Colorado statutes." *Crowe*, 126 P.3d at 207 (quoting *Showpiece Homes*, 38 P.3d at 49); *see also Giles v. Inflatable Store, Inc.*, No. 07–cv–00401, 2009 WL 961469, at *3 n. 4 (D.Colo. Apr. 6, 2009) ("Looking to fraud principles makes sense given that the [CCPA] is, at bottom, an antifraud statute.").

¶ 33 Accordingly, we also conclude the district court erred by ruling that, without the record from the original county court action or any special findings of fraud from the jury, it could not find that there was a determination of fraud or fraudulent representation as required by section 12–6–111. In our view, it is not necessary to review the entire record of the county court action to resolve the legal issue presented here. Because the jury found that Fitzgerald had violated section 6–1–708(1)(a)(I), and because the trial court's entry of judgment on the jury's verdict constitutes an appropriate determination by a court of competent jurisdiction, we conclude there was, as a matter of law, a final determination of fraud for purposes of satisfying the Motor Vehicle Bond Statute.

¶ 34 We acknowledge and reject Pioneer's contention that we should not construe

the CCPA and the Motor Vehicle Bond Statute together and that it is not this court's place to intervene in the regulatory complexities of the motor vehicle industry "that have come under years of legislative scrutiny." To the contrary, courts interpret statutes, and where, as here, the General Assembly has not explicitly stated whether the two statutes at issue should be read together, it is the court's role to make that determination. And indeed, our supreme court has made clear that the CCPA is " 'meant to work in tandem with other regulatory provisions in the Colorado statutes.' " *Crowe,* 126 P.3d at 207 (quoting *Showpiece Homes,* 38 P.3d at 49). The supreme court has further noted that nothing in the CCPA grants "a wholesale exemption to any industry or occupation that is subject to regulation." *Id.* Here, as we have concluded, sections 6–1–708 and 12–6–111 may be read together harmoniously to effect the General Assembly's intent to provide compensatory remedies to consumers who are damaged by deceitful and fraudulent conduct of motor vehicle dealers.

¶ 35 Given our resolution of this issue, we need not address the parties' arguments or the district court's discussion regarding the jury's finding of bad faith under section 6–1–113(2)(a)(III).

### D. Attorney Fees and Costs

¶ 36 In the district court, plaintiffs also argued that they were entitled to recover from Pioneer the attorney fees and costs they had been awarded as part of their judgment against Fitzgerald. Because the district court concluded that the surety bond was unavailable to plaintiffs, it similarly denied their request to recover their attorney fees and costs under the bond. We reverse this aspect of the district court's order and judgment as well.

¶ 37 In *Edmonds v. Western Surety Co.,* a division of this court addressed this very issue and held that, where, as here, a statute expressly authorizes the recovery of attorney fees and costs against the principal obligor

on the underlying claim, such sums qualify as a "loss suffered" within the meaning of a surety bond issued pursuant to section 12–6–111. 962 P.2d at 328. We agree with the division's reasoning in *Edmonds* and follow it in this case as well.

¶ 38 Here, the CCPA specifically authorizes the recovery of costs and reasonable attorney fees, § 6–1–113(2)(b), and, accordingly, plaintiffs were awarded such costs and fees in their county court action. Thus, we conclude that plaintiffs can recover those attorney fees and costs from Pioneer, as the surety on the bond, in addition to their actual damages of $3500.[3]

¶ 39 Because of our resolution of this matter, we deny Pioneer's request for attorney fees incurred on appeal pursuant to section 13–17–102, C.R.S.2013.

### III. Conclusion

¶ 40 The district court's order and judgment denying plaintiffs' motion for declaratory judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE NEY * and JUDGE ROY* concur.

---

**3.** Plaintiffs have not sought to recover from Pioneer the award of treble damages in the county court, perhaps recognizing that the bond does not cover such an award as a matter of law. *See Edmonds v. W. Sur. Co.,* 962 P.2d 323, 326–27 (Colo.App.1998).

