644 So.2d 571 (1994)
DEALERS INSURANCE COMPANY, INC., Appellant,
v.
CENTENNIAL CASUALTY COMPANY, et al., Appellee.
No. 93-1704.
District Court of Appeal of Florida, Fifth District.
October 14, 1994.
Rehearing Denied November 9, 1994.
*572 Wm. Patrick Fulford and Curtis L. Brown, Wright, Fulford, Moorhead & Wittek, P.A., Orlando, and Alan C. Sundberg and F. Townsend Hawkes, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellant.
Charles R. Stepter, Jr. and David S. McDonald, Fishback, Dominick, Bennett, Stepter, Ardaman & Bonus, Orlando, for appellee.
GRIFFIN, Judge.
This is the appeal of a final judgment awarding recovery under a statutory motor vehicle dealer bond. We affirm in part and reverse in part.
In Florida, motor vehicle dealer bonds are governed by section 320.27(10), Florida Statutes, which makes the posting of such a bond [by a motor vehicle dealer] mandatory as a condition of annual licensure. This oftamended statute, which has been on the books since 1958 and which was last amended in 1985, presently provides in pertinent part:
(b) Surety bonds and irrevocable letters of credit shall be in a form to be approved by the department and shall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and this chapter in the conduct of the business for which he is licensed. Such bonds and letters of credit shall be to the department and in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions hereinabove contained.
Appellant, Dealers Insurance Company, Inc. ["Dealers"], issued a motor vehicle dealer bond to Krash Enterprises, Inc. ["Krash"] in the statutorily mandated amount of $25,000.
In 1991, Krash undertook to purchase automobiles at auctions conducted by West Palm Beach Auto Auction ["WPBAA"]. Before participating in any auction at WPBAA, Krash entered into a "Dealer Registration Agreement." Paragraph eight of this agreement contained the following provisions:
8. With respect to each and every vehicle purchased by Dealer, Dealer agrees that: (c) Dealer will pay [WPBAA] the purchase price of the vehicle by draft, check or cash (as requested by [WPBAA]) immediately upon tender of good title thereto. Upon *573 failure to so pay, [WPBAA] may without further notice to Dealer dispose of such vehicle through a subsequent auction sale, and Dealer shall be liable to [WPBAA] for all costs of collection, loss on resale of the vehicle, and any other damage [WPBAA] may sustain, including reasonable attorney's fees incurred in collecting payments due and interest.
WPBAA conducted auctions in October, November and December, 1991 at which Krash was the high bidder for the purchase of certain automobiles. After each auction sale was concluded, Krash tendered a documentary draft to WPBAA as payment for each vehicle. The selling dealers and Krash then executed documents entitled "odometer disclosure statement/bill of sale of motor vehicle," which set forth the purchase price and identified each purchased vehicle. Krash then obtained possession of the vehicles. Upon conclusion of the first auction sale, WPBAA forwarded Krash's draft to its bank for payment but the draft was dishonored. WPBAA nonetheless allowed Krash to continue purchasing vehicles at WPBAA. The drafts tendered for the vehicles purchased at the November 27 and December 5, 1991 auctions were also dishonored. It is undisputed that WPBAA was contractually bound to pay the purchase price to the sellers of the motor vehicles and has done so.
WPBAA then presented a "bad draft" claim to its bad draft insurer, appellee, Centennial Casualty Company ["Centennial"]. After payment, Centennial, as subrogee of WPBAA, brought this action against Dealers seeking to recover under the motor vehicle dealer bond issued by Dealers, as surety, for Krash, as principal. The two issues on appeal are whether Centennial is a statutorily authorized claimant under the bond and, if so, whether Centennial is entitled to recover attorney's fees incurred in the action below under the bond.
The first issue is answered by the very broad language chosen by the legislature in drafting the statute. Although the Dealer Registration Agreement was not separately executed at the time of each auction purchase by Krash, this agreement governed all material terms of the transaction except for the identity of the car and the purchase price. It set forth who was to receive payment, when payment was due and the required form of payment. It also outlined the remedies available to WPBAA for the buyer's breach and contained the buyer's guarantee of good title from WPBAA. Plainly, therefore, the Dealer Registration Agreement was a "written contract made in connection with the sale of any motor vehicle" within the terms of section 320.027(10)(b) and WPBAA was a "person in a wholesale transaction who suffered a loss as a result of the failure of the dealer to comply with the conditions of its written contract"[1] entitled to recover under the bond.
As to the second issue, we conclude the award of attorney's fees to Centennial was error. There is no statutory basis for such an award against a surety. Section 627.428, Florida Statutes, does not apply and nothing in Chapter 320 authorizes an award of attorney's fees. Although the Dealer Registration Agreement contains a provision authorizing recovery of fees against Krash, under Florida law a surety is not liable for attorney's fees unless the bond itself contains a provision for recovery of attorney's fees. Bankers Fire and Casualty Ins. Co. v. Newman, 330 So.2d 760 (Fla. 4th DCA 1976). This bond does not. It provides:
NOW, THEREFORE, if the above named principal shall fully comply with the conditions of any written contract made by him as such dealer in connection with the sale or exchange of any motor vehicle, and shall pay or cause to be paid to any person in a retail or wholesale transaction any loss or damages which such person shall sustain as a result of any failure to comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle or as a result of any violation of the provisions of Chapter 319 or 320, Florida Statutes, in the conduct of business for which he is licensed, then this obligation shall be void, otherwise to remain in full force and effect.
Centennial urges that its right of recovery of fees from Krash is incorporated into the *574 bond based on the "any loss or damage" language; however, as noted in United Bonding Insurance Co. v. Inter National Bank of Miami, 221 So.2d 20 (Fla. 3d DCA 1969), this was a suit on the bond, not on the Dealer Registration Agreement.[2] The point of suretyship is that it offers a secondary source for collection of monies due contractually. Centennial did not recover from Krash under the contract; it recovered from Dealers under the bond.
A surety bond is an instrument of secondary liability defined by its express terms. See Aronson v. Ahringer, 322 So.2d 634 (Fla. 3d DCA 1975). It is not a contract of indemnity. Dealers agreed to make good the loss resulting from its principal's failure to comply with its contractual obligation to tender good payment for the cars it purchased. Dealers never agreed to pay fees for Centennial's pursuit of Krash or for Centennial's successful prosecution of a claim under the bond. The award of attorney's fees is reversed.
AFFIRMED IN PART; REVERSED IN PART.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] Section 320.27(10)(b).
[2] Krash was named as a codefendant in the suit below but never appeared and a default was promptly entered. Even if the bond were (over)broadly construed to incorporate fees incurred in obtaining a judgment against Krash, fees for obtaining a judgment against Dealers would not be embraced by this language.