758 So.2d 94 (2000)
Kathryn HUBBEL, Petitioner,
v.
AETNA CASUALTY & SURETY COMPANY, Respondent.
C.B. Herbert, et al., Petitioners,
v.
Aetna Casualty & Surety Company, Respondent.
Nos. SC92532, SC92848.
Supreme Court of Florida.
April 20, 2000.
J. Gordon Blau, Orlando, Florida, and Marcia K. Lippincott, Lake Mary, Florida, for Petitioner.
Kimberly A. Ashby of Maguire, Voorhis & Wells, P.A., Orlando, Florida, and James W. Sears of Sears & Manuel, P.A., Orlando, Florida, for Respondent.
PER CURIAM.
We have before us the opinions in Aetna Casualty & Surety Co. v. Hubbel, 704 So.2d 1141 (Fla. 5th DCA 1998), and Aetna Casualty & Surety Co. v. Herbert, 706 So.2d 417 (Fla. 5th DCA 1998), which we have consolidated for purposes of review. In these cases, the Fifth District Court of Appeal concluded that, in an action alleging a motor vehicle dealer's violation of Chapter 501, Part II, Florida Statutes, Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), attorney's fees could not be recovered from a surety bond that does not provide for such fees. In so holding, the district court certified conflict with Marshall v. W & L Enterprises Corp., 360 So.2d 1147 (Fla. 1st DCA 1978), in which the First District Court of Appeal concluded that the surety for a mobile home dealer was liable for attorney's fees incurred by the plaintiffs who successfully established that the dealer violated FDUPA. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we approve the result of the *95 district court's decisions in these cases and we disapprove Marshall.
The facts of these two consolidated cases are set forth below.

HUBBEL
Kathryn Hubbel filed a claim for $345.00 against a motor vehicle dealer alleging fraud and deceptive trade practices. She also sought recovery under the $25,000 surety bond issued to the dealer by Aetna Casualty & Surety Company (Aetna) under section 320.27(10), Florida Statutes (1997). After the dealer defaulted and a default judgment was entered, Hubbel filed a demand for judgment against Aetna for $345.00, which Aetna paid. The county court subsequently granted attorney's fees against the dealer and Aetna in favor of Hubbel in the amount of $10,000. Aetna appealed the award of attorney's fees, and the circuit court affirmed the county court order. The circuit court held that the attorney's fee provision of FDUTPA was incorporated in section 320.27(10), the statute that requires motor vehicle dealers to post a surety bond or to obtain a letter of credit to cover consumer losses. In doing so, the circuit court relied on Marshall.
The district court quashed the circuit court's affirmance of the county court's award of attorney's fees. See Hubbel. First, the district court stated that Aetna's surety bond did not contain a provision for an award of attorney's fees. Next, the district court stated that the attorney's fee provision in FDUTPA does not apply to a surety bond action under chapter 320. The district court noted, however, that the First District, in Marshall, had reached a contrary conclusion under a nearly identical statute.

HERBERT
C.B. and Annie Herbert filed a claim in county court against a motor vehicle dealer and its surety, Aetna, charging the dealer with violations of chapter 320, which also constituted deceptive trade practices under FDUTPA. The surety bond was provided to the dealer pursuant to section 320.27(10). At a non-jury trial, the dealer was found to have engaged in unfair and deceptive trade practices and the trial court awarded $33.77 in damages. The county court then awarded attorney's fees against the dealer and Aetna in the amount of $11,550, which Aetna appealed. The circuit court affirmed the award, but the Fifth District summarily quashed the circuit court's affirmance, citing to its decision in Hubbel. See Herbert.

Attorney's Fees Under Section 320.27(10)
Petitioners Hubbel and Herbert argue that the loss covered by a motor vehicle dealer's bond includes attorney's fees because section 320.27(10) requires the bond to cover "any loss or damage" of a dealer's customer and because the attorney's fee provision under FDUTPA is incorporated into chapter 320. They assert that public policy dictates such a finding because both chapter 320 and FDUTPA were designed to protect consumers and to make them whole. Alternatively, petitioners, for the first time, argue that attorney's fees should be awarded under section 627.428, Florida Statutes (1997), because this Court recently concluded in Nichols v. Preferred National Insurance Co., 704 So.2d 1371 (Fla.1997), that attorney's fees are proper against surety companies under that provision. That claim was not made in the trial court or before the district court of appeal.
The statements of claims in these cases specifically alleged fraud and intentional misrepresentation and deceptive and unfair trade practices against the motor vehicle dealers under FDUTPA. Section 501.2105, Florida Statutes (1997), a part of FDUTPA, provides for attorney's fees for the prevailing party in such an action. However, the statute in issue in this proceeding is section 320.27(10) and the bond provisions directed by the state agency to implement that statute. It requires motor vehicle dealers to obtain surety bonds or an irrevocable letter of credit in the amount of $25,000 prior to obtaining a *96 license. Under that provision, "[s]uch bonds and letters of credit shall be to the department and in favor of any person ... who shall suffer any loss as a result of any violation of the conditions hereinabove contained." The "hereinabove contained" language refers to the following condition language: "Surety bonds and irrevocable letters of credit shall be in a form to be approved by the department and shall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and [chapter 320] in the conduct of the business for which the dealer is licensed."[1]
The issue is whether attorney's fees are to be considered "any loss" under section 320.27(10). The court in Marshall addressed a similar issue as it applied to an earlier version of a related statute, section 320.77, which is the statute governing surety bonds for mobile home dealers. In Marshall, the court concluded that section 320.77 included attorney's fees provided for under FDUTPA because the reference in section 320.77 to "any loss" applied to any "violation of any provision of [section 320.77] or of any other law of this state having to do with dealing in mobile homes." The Marshall court concluded that a violation of FDUTPA was obviously a violation of a law of this state and accordingly included attorney's fees under the term "any loss." The court also noted that
[t]he obvious purpose of the "Little FTC Act" is to make consumers whole for *97 losses caused by fraudulent consumer practices. Similarly, the purpose of the bonding and licensing requirements in chapter 320 is protection of consumers who deal with mobile home dealers. These aims are not served if attorney's fees are not included in the protection.
360 So.2d at 1148.
We find the Marshall court's partial reliance on the "any other law" language found in section 320.77(10), Florida Statutes (1975), misplaced. That language pertained only to the suspension or revocation of a mobile home dealer's license, and not the provision for a surety bond found in section 320.77(11). That same "any other law" language is similarly confined in the licensing provision of the statutory scheme we consider today.[2]
Further, like the statutory bond provision at issue in Marshall, the statute in this case states that "any loss" applies to "the conditions of any written contract" made by the dealer during a sale and to any violations of chapters 319 and 320.[3] It does not extend to violations of "any law of the state." Generally, the law is clear that attorney's fees are not considered to be a "loss" or damages, and to be recoverable must be expressly provided for by statute, rule, or contract. The written contract in this case, the surety bond, does not contain a provision for attorney's fees. Nor does the complaint assert any violations of chapters 319 and 320.[4] Most important, there is no provision for attorney's fees in section 320.27(10). While chapter 320 does contain provisions for attorney's fees elsewhere, see, e.g. §§ 320.697, 320.8245, 320.838, Fla. Stat. (1997), it does not contain such a provision in section 320.27(10).
We conclude that under the plain language of the statute, attorney's fees are not included under the statutory scheme set forth in section 320.27(10); accordingly, we disapprove Marshall.
Next, we find the asserted public policy concerns are not justifiable and would effectively destroy the statutory scheme which establishes a modest fund for consumers to obtain a refund of their monies. As illustrated by the facts in this case, to accept the view of the petitioners would mean the primary beneficiary of the fund would be the attorneys, not the consuming public. The legislative scheme was intended to establish a very modest fund of $25,000 from which consumers could recover damages when car dealers went out of business and defaulted in their obligations. The Hubbel case is an illustration of the type of claim that was intended to be *98 protected. Once the default was entered and the validity of the claim established, which easily could have been done in a small claims proceeding, the judgment was immediately paid by the surety. If we accepted the arguments of the claimants in this case, logic and commonsense necessarily lead to the conclusion that the asserted judicial construction would result in the attorney's fee provisions substantially depleting the fund. The applicable statute, section 320.27(10), by its clear terms, states "the aggregate liability of the surety in any one year shall in no event exceed the sum of the bond, or in the case of a letter of credit, the aggregate liability or the issuing bank shall not exceed the sum of the credit." If the obligation was as open-ended as asserted by the claimants, few sureties and no banks would provide the bond or letter of credit to make this statutory scheme work.
We reject petitioner's claim in this Court based upon Nichols v. Preferred National Insurance Co., 704 So.2d 1371 (Fla.1997). That case interpreted the provisions of section 627.428. The petitioners in the instant case failed to claim attorney's fees under that section both at trial and on appeal.
Accordingly, for the reasons expressed, we approve the result reached by the district court in these cases.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and PARIENTE, JJ., concur.
LEWIS, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
LEWIS, J., concurring in part and dissenting in part.
I concur with the majority's determination that neither Kathryn Hubbel (Hubbel) nor C.B. and Annie Herbert (the Herberts) may recover attorney's fees from Aetna Casualty and Surety Company (Aetna) under section 627.428(1), Florida Statutes (1999),[5] only because the allegations in the complaints were specifically limited to a different statute and the claims were not presented in general terms or under section 627.428 in any of the proceedings below. Based on the specific facts of the present cases, however, I respectfully dissent from the majority's determination that costs and attorney's fees included in the judgments in favor of Hubbel and the Herberts as elements of recoverable loss under the law applicable to these facts do not constitute "any loss" as those words are utilized in section 320.27(10), Florida Statutes (1999).[6] In my view, the majority's determination on this issue has been tainted, and unfortunately misdirected, by a distaste for the amount of attorney's fees awarded to Hubbel and the Herberts at the trial level, despite the fact that the validity of such amounts has not been challenged in this Court and has never been an issue before this Court for consideration.[7] In a similar manner and contrary to the majority's analysis, the face amount of the surety bond does not in any way address the definition of the phrase "any loss" for which bonds or letters of credit are required to respond. Contrary to the majority's determination, I conclude that the plain meaning of section 320.27(10)which is also supported by public policy-requires that when a motor vehicle dealer fails to *99 comply with the conditions of a written contract (such as a refusal to refund a deposit as occurred in one of these cases) and the conduct is so egregious that it is an unfair and deceptive trade practice under chapter 501, Florida Statutes (1999), for which Florida law describes the elements of loss recoverable to include costs and attorney's fees, the elements of loss as described by statute are or should be covered by the surety bond provided pursuant to section 320.27(10)(a). The plain meaning of the statute requires such bonds to respond to "any loss" as those elements are established by Florida law. To understand the basis for this conclusion, a brief review of the facts is necessary.

I. FACTS IN THE PRESENT CASES

A. HUBBEL'S CASE
Hubbel filed an action in county court against a motor vehicle dealer, alleging fraud and deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act (the FDUTPA). She specifically alleged, among other things, that the motor vehicle dealer had failed to refund a $500 deposit to her in accordance with a written contract executed by the parties, and she also sought recovery under the surety bond issued by Aetna pursuant to section 320.27(10). Aetna ultimately paid an amount set forth by Hubbel in a demand for judgment, and the trial court determined that Hubbel was entitled to recover from the dealer and Aetna, jointly and severally, attorney's fees, costs, and prejudgment interest under the law applicable to the action.
On appeal in the circuit court, Aetna did not contest the award of costs or prejudgment interest, but instead contested only the award of attorney's fees. Further, Aetna did not challenge the amount of attorney's fees awarded to Hubbel, but argued only that there was no basis for recovery of the attorney's fees portion of the judgment from Aetna under the surety bond. The circuit court, in its appellate capacity, held that the attorney's fees element of loss as provided to a prevailing party under section 501.2105, Florida Statutes (1999), which is part of the FDUTPA, was incorporated into section 320.27(10), the statute requiring motor vehicle dealers to annually post a surety bond, and, therefore, Hubbel was entitled to recover attorney's fees from the surety, Aetna. In so holding, the circuit court relied on the First District's decision in Marshall v. W & L Enterprises Corp., 360 So.2d 1147 (Fla. 1st DCA 1978). Aetna sought review of the circuit court's determination in the Fifth District Court of Appeal.
The Fifth District quashed the circuit court's affirmance of the county court's award of attorney's fees. See Aetna Cas. & Sur. Co. v. Hubbel, 704 So.2d 1141, 1142 (Fla. 5th DCA 1998). As the majority has determined here, the Fifth District held that, in an action alleging a motor vehicle dealer's violation of the FDUTPA, attorney's fees may not be recovered on a surety bond that does not specifically provide for recovery of such fees. See id. In so holding, the Fifth District certified conflict with the First District's decision in Marshall.[8]

B. THE HERBERTS' CASE
The Herberts filed an action in county court against a motor vehicle dealer, alleging violations of chapter 320, Florida Statutes (1995), which also constituted deceptive trade practices under the FDUTPA. In the same action, the Herberts sought recovery from the motor vehicle dealer's surety, Aetna, which had provided a surety bond under section 320.27(10). The court determined that the dealer had in fact violated the terms of a written contract and engaged in unfair and deceptive trade *100 practices under the FDUTPA. Based upon this determination, the court entered judgment in favor of the Herberts and also awarded costs and attorney's fees against the dealer and Aetna, jointly and severally.
On appeal to the circuit court, as in Hubbel, Aetna did not contest the award of costs, but instead contested only the award of attorney's fees. Unlike Hubbel, however, in the Herberts' case, Aetna challenged both the basis for the award of attorney's fees and the amount awarded. After considering the parties' arguments, the circuit court affirmed both the element of attorney's fees and the amount awarded as losses for which Aetna was responsible. Aetna again sought review in the Fifth District, and the court relied on its decision in Hubbel to quash the circuit court's appellate decision. See Aetna Cas. & Sur. Co. v. Herbert, 706 So.2d 417, 417 (Fla. 5th DCA 1998). It is under these circumstances that the present cases come before this Court for resolution.

II. ANALYSIS OF SECTION 320.27(10) AND SECTION 501.2105

A. PLAIN MEANING OF THE STATUTES
Section 320.27(10)(a), Florida Statutes, requires a motor vehicle dealer to post a surety bond or obtain an irrevocable letter of credit, in the amount of $25,000, as an annual prerequisite to being licensed in Florida. The amount of the bond or letter of credit has not increased for the last fifteen years.[9] The bond or letter of credit is issued "in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions hereinabove contained." § 320.27(10)(b), Fla. Stat. (1999) (emphasis added). The phrase "hereinabove contained" refers to the following statutory language:
Surety bonds and irrevocable letters of credit shall be ... conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and this chapter [chapter 320] in the conduct of the business for which the dealer is licensed.
Id. (emphasis added). The provisions of the surety bonds issued by Aetna in the cases here are those required by section 320.27(10)(b), and the bonds are substantively identical to each other. There is no substantive difference between the terms of this statutory bonding provision and those of section 320.77(11), which were considered, analyzed, and applied by the Marshall court.
Section 501.2105(1), Florida Statutes, provides that the prevailing party in civil litigation resulting from a violation of the FDUTPA may recover reasonable attorney's fees and costs as elements of loss from the nonprevailing party in such litigation. Section 501.2105(4), Florida Statutes, provides, "Any award of attorney's fees or costs shall become part of the judgment and subject to execution as the law allows."
Based on the plain language of sections 320.27(10) and 501.2105, several matters are clear. First, before one may seek recovery under a surety bond or irrevocable letter of credit pursuant to section 320.27(10), a motor vehicle dealer must (1) violate the conditions of a written contract for the sale or exchange of a motor vehicle; or (2) violate any provision contained in chapters 319 or 320 of the Florida Statutes. Second, if the motor vehicle dealer violates a written contract or a statutory provision of chapters 319 or 320, the bond or letter of credit issued pursuant to section 320.27(10) shall cover "any loss" resulting therefrom. Finally, according to section 501.2105, the prevailing party on a claim under the FDUTPA may recover reasonable attorney's fees and costs as *101 elements of loss from the nonprevailing party.[10] Based on these clear representations of legislative intent from the words utilized, as well as the particular facts of these cases, I conclude that the phrase "any loss" includes the elements of attorney's fees and costs as provided by statute and included as part of the judgment against a dealer.[11]
In Hubbel's case and the Herberts' case, the motor vehicle dealers violated at least one of the conditions set forth in section 320.27(10) and, correspondingly, one of the provisions set forth in the surety bonds issued by Aetna became applicable. Specifically, as established by the trial court's entry of a judgment against the motor vehicle dealer in Hubbel's case, see, e.g., Ellish v. Richard, 622 So.2d 1154, 1155 (Fla. 4th DCA 1993) (recognizing that the party against whom a default judgment is entered admits all well-pleaded factual allegations as true), the dealer failed to refund a deposit to Hubbel in accordance with a written contract executed by the parties, which would constitute a breach of a written contract for the sale or exchange of a motor vehicle. In a similar manner, in the Herberts' case, the trial court specifically found that the dealer failed to comply with the conditions of a written contract for the sale or exchange of a motor vehicle. Tellingly, Aetna has not contested its underlying liability on the bonds issued to the dealers in the cases here, but instead has contested only its liability for the element of attorney's fees. Thus, it is clear that the motor vehicle dealers subject to the judgments violated at least one of the conditions set forth in section 320.27(10), and the bonds issued by Aetna became applicable.[12] Therefore, Aetna should now be required to respond for "any loss" suffered by Hubbel and the Herberts as a result of the dealers' misconduct.
I conclude that, in these cases, the term "any loss" as utilized in the statute we are considering includes attorney's fees and costs awarded by the trial court in the judgments to both Hubbel and the Herberts because the Legislature has established such items as elements of recoverable loss under these factual circumstances. In Hubbel's case and the Herberts' case, the dealers' misconduct constituted not only a violation of a written contract, but also an unfair and deceptive trade practice as defined by Florida law in violation of the FDUTPA. In such circumstances, when a violation of one of the conditions contained in section 320.27(10) occurs and *102 such conduct is egregious to the extent to be subject to the FDUTPA, and attorney's fees and costs are established as recoverable losses under that chapter, those fees and costs constitute part of "any loss" as defined by law and are recoverable by the beneficiary of the bond. The Legislature has established in the FDUTPA that attorney's fees and costs are items of recoverable loss to be included in the judgment when such violations occur.
A Colorado court recently addressed a similar issue in Edmonds v. Western Surety Co., 962 P.2d 323 (Colo.Ct.App.1998), in which a consumer sued a motor vehicle dealer because the dealer had issued him a check for $10,400, which had been dishonored twice. See 962 P.2d at 325. The action against the dealer was based upon a statute which permitted recovery of damages for checks not paid upon presentment, and the statute allowed the prevailing party to recover attorney's fees and costs as elements of recoverable loss. See id. at 325, 328. The judgment obtained by the plaintiff against the dealer included attorney's fees and costs, and when the dealer did not satisfy the judgment, the plaintiff sought recovery from the surety company that had issued a $30,000 bond to the dealer under a statute similar to section 320.27(10). See id. at 325. Specifically, the statute stated that the bond was to "provide for the reimbursement for `any loss or damage suffered by any retail consumer.'" Id. at 328 (quoting section 12-6-111(2)(a), Colorado Revised Statutes (1997)).
The trial court did not reach the issue concerning attorney's fees and costs, but the Edmonds court addressed the surety's claim that it was not liable for those elements of loss. See 962 P.2d at 327-28. In finding the surety responsible under the bond for the payment of those portions of the judgment for attorney's fees and costs, the court reasoned:
As a general rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action. This reasoning is based on the American rule, which requires each party in a lawsuit to bear its own legal expenses. Bernhard v. Farmers Insurance Exchange, 915 P.2d 1285 (Colo.1996).
Section 13-21-109, C.R.S.1997, under which Edmonds recovered the judgment against [the motor vehicle dealer], provides that: "In any civil action brought under this section, the prevailing party may recover court costs and reasonable attorney fees." This language undoubtedly imposes liability on the maker of a dishonored check for the holder's attorney fees expended in pursuit of the damage award. See The Group, Inc. v. Spanier, [940 P.2d 1120 (Colo.Ct.App. 1997)]. Indeed, the trial court here awarded attorney fees and costs in favor of Edmonds against [the motor vehicle dealer]. However, § 13-21-109 does not address secondary obligations.
As noted previously, the bond terms require surety to indemnify Edmonds for "any loss suffered," and § 12-6-111(2)(a) states that the purpose of the bond is to provide for the reimbursement for "any loss or damage suffered by any retail consumer."
It is true, as surety argues, that costs and attorney fees are not ordinarily damages or losses that are suffered as a direct result of the conduct of the principal obligor. See Ferris v. Haymore, [967 F.2d 946 (4th Cir.1992)] (attorney fees and costs recovered against principal obligor not recoverable as "loss or damages suffered" under bond); Knecht, Inc. v. United Pacific Insurance Co., 860 F.2d 74 (3d Cir.1988) (attorney fees not recoverable on bonds which provide that claimants can sue for sums "as may be justly due").
However when, as here, a statute expressly authorizes the recovery of attorney fees against the principal obligor on the underlying claim, such sums qualify *103 as a "loss suffered" within the meaning of the bond terms.
Edmonds, 962 P.2d at 328. I agree with the court's analysis in Edmonds and believe it to be sound and reasonable in application.
Further, it is well settled in Florida that the liability of a surety is coextensive with that of the principal, see American Home Assurance Co. v. Larkin General Hospital, Ltd., 593 So.2d 195, 198 (Fla.1992) (citing Cone v. Benjamin, 150 Fla. 419, 8 So.2d 476 (1942), and National Union Fire Ins. Co. v. Robuck, 203 So.2d 204 (Fla. 1st DCA 1967)), with the caveat that the surety's liability is limited by the terms of the bond. See American Home, 593 So.2d at 198. Holding Aetna responsible for attorney's fees and costs as part of the judgment based on the specific facts involved in Hubbel's case and the Herberts' case would not be contrary to these well-settled principles of law. The motor vehicle dealers in question here are responsible to Hubbel and the Herberts for payment of attorney's fees and costs under the judgments as provided in section 501.2105, and holding Aetna coextensively responsible for those fees and costs would not violate the terms of the surety bonds or statute because, under the bonds, Aetna is responsible for "any loss" resulting from the dealers' violations of the conditions enumerated in section 320.27(10). Accordingly, based on the above, I conclude that the plain meaning of sections 320.27(10) and 510.2105 render Aetna responsible for attorney's fees and costs in the cases here. I would approve the decision in Marshall and quash the decisions below.[13]

B. PUBLIC POLICY
In my view, the flow of the majority opinion evidences that its determination of the issue presented has been poisoned by a distaste for the amount of attorney's fees awarded to Hubbel and the Herberts at the trial level, even though there is no issue before this Court as to the amounts determined proper by the trial courts. The effect of this misdirection surfaces in the majority's public policy discussion, in which the majority asserts that allowing attorney's fees to be recoverable in the present cases "would mean the primary beneficiary of the fund would be the attorneys, not the consuming public." Majority op. at 97. I disagree.
I fear that the majority view fails to accommodate the dominant purpose and practical application of the licensing and bonding requirements for those engaged in the business of buying, selling, or dealing in motor vehicles in Florida. Contrary to the majority view, the amount of the surety bond or letter of credit does not in any way speak to the issue of the elements of "any loss" or recovery for which the security is required to respond. I would conclude that our public policy must recognize that transportation is a virtual necessity for Florida's working families and, more likely than not, the occasions when this type of security will be called upon to respond will involve marginal business operations dealing in lower-quality products. This type of business tends to economically abuse customers of limited economic power. It is precisely this segment of our population that has the least economic ability to withstand the loss and the most need for, but inability to independently obtain, proper legal counsel that will find themselves involved in disputes such as these. Those facing such circumstances require knowledge of the available legal remedy to even access the surety bonds or letters of credits when the conduct is the violation of a written contract and not a separate chapter *104 319 or 320 violation.[14] If Florida's families do not have access to competent legal counsel when the contract violation is so egregious as to constitute an unfair and deceptive practice as defined by our law, the available remedy designed to protect these individuals, the security, becomes effectively insulated from accomplishing the very purpose for which it was originally intended. I suggest that it is through this window of public policy that the statute at issue must be viewed when we consider and apply the extent to which the bonds provide protection to Florida's families when chapter 320, Florida Statutes, does not provide a definition of the term "any loss".
I also take issue with the majority's inclusion of a "fear factor" and "doomsday" suggestion that few sureties and no banks would provide bonds or letters of credit to make the statutory scheme work if the obligation was "open-ended as asserted by the claimants." Majority op. at 98. First, the claimants here candidly admitted during oral argument that the exposure of the surety under the terms of section 320.27(10) for the judgment against the principal (dealer) is not open-ended and is limited to the facial amount of the bond issued. Second, sureties and banks are not only paid premiums and fees for such services, they also have the economic leverage to have collateral or security requirements in place to protect against payments of a loss. Third, the obligation of a surety to respond is generally coextensive with the liability of the principal within the terms of the bond.

III. ANALYSIS OF SECTION 627.428(1)
Hubbel and the Herberts alternatively claim entitlement to attorney's fees under section 627.428(1), Florida Statutes, because this Court recently concluded in Nichols v. Preferred National Insurance Co., 704 So.2d 1371, 1373 (Fla.1997), that attorney's fees may be recovered from surety companies under that statutory provision. I would agree with this alternative position had it been properly presented in the courts below.
In Nichols, this Court found that section 627.428(1) applies to sureties because a surety is considered an "insurer" as used in that statutory subsection. See Nichols, 704 So.2d at 1373 (relying on the definition of "insurer" set forth in section 624.03, Florida Statutes (1995)). Although Nichols involved a surety on a guardianship bond, this Court disapproved Dealers Insurance Co. v. Centennial Casualty Co., 644 So.2d 571 (Fla. 5th DCA 1994), which involved a surety on a motor vehicle dealer bond under section 320.27(10), "to the extent that [Dealers] holds that section 627.428 does not apply to sureties." Nichols, 704 So.2d at 1374. In fact, this Court has consistently applied section 627.428, Florida Statutes, in the surety context. See Danis Indus. Corp. v. Ground Improvement Techniques, Inc., 645 So.2d 420 (Fla.1994); Insurance Co. of North America v. Acousti Eng'g Co. of Florida, 579 So.2d 77 (Fla.1991), receded from on other grounds by Turnberry Assocs. v. Service Station Aid, Inc., 651 So.2d 1173 (Fla. 1995). The apparent public policy underlying section 627.428 is to discourage insurers, including sureties, from contesting valid claims and to reimburse those forced into litigation to enforce their rights. See, e.g., Bell v. U.S.B. Acquisition Co., 734 So.2d 403, 410 n. 10 (Fla.1999); State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 833 (Fla.1993).
Since this claim was not preserved in any lower court and the allegations in the complaints for fees were specifically stated to be based upon a different statute, I *105 agree with the majority view that section 627.428(1), Florida Statutes, cannot now be applied in the cases here.
ANSTEAD, J., concurs.
NOTES
[1] Section 320.27(10) provides in full as follows:

(10) SURETY BOND OR IRREVOCABLE LETTER OF CREDIT REQUIRED.
(a) Annually, before any license shall be issued to a motor vehicle dealer, the applicant-dealer of new or used motor vehicles shall deliver to the department a good and sufficient surety bond or irrevocable letter of credit, executed by the applicant-dealer as principal, in the sum of $25,000.
(b) Surety bonds and irrevocable letters of credit shall be in a form to be approved by the department and shall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and this chapter in the conduct of the business for which the dealer is licensed. Such bonds and letters of credit shall be to the department and in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions hereinabove contained. When the department determines that a person has incurred a loss as a result of a violation of chapter 319 or this chapter, it shall notify the person in writing of the existence of the bond or letter of credit. Such bonds and letters of credit shall be for the license period, and a new bond or letter of credit or a proper continuation certificate shall be delivered to the department at the beginning of each license period. However, the aggregate liability of the surety in any one year shall in no event exceed the sum of the bond or, in the case of a letter of credit, the aggregate liability of the issuing bank shall not exceed the sum of the credit.
(c) Surety bonds shall be executed by a surety company authorized to do business in the state as surety, and irrevocable letters of credit shall be issued by a bank authorized to do business in the state as a bank.
(d) Irrevocable letters of credit shall be engaged by a bank as an agreement to honor demands for payment as specified in this section.
(e) The department shall, upon denial, suspension, or revocation of any license, notify the surety company of the licensee, or bank issuing an irrevocable letter of credit for the licensee, in writing, that the license has been denied, suspended, or revoked and shall state the reason for such denial, suspension, or revocation.
(f) Any surety company which pays any claim against the bond of any licensee or any bank which honors a demand for payment as a condition specified in a letter of credit of a licensee shall notify the department in writing that such action has been taken and shall state the amount of the claim or payment.
(g) Any surety company which cancels the bond of any licensee or any bank which cancels an irrevocable letter of credit shall notify the department in writing of such cancellation, giving reason for the cancellation.
[2] Section 320.27(9) provides in pertinent part:

(9) DENIAL, SUSPENSION, OR REVOCATION.
The department may deny, suspend, or revoke any license issued hereunder or under the provisions of s. 320.77 or s. 320.771, upon proof that a licensee has failed to comply with any of the following provisions with sufficient frequency so as to establish a pattern of wrongdoing on the part of the of the licensee:
(a) Willful violation of any other law of this state, including chapter 319, this chapter, or ss. 559.901-559.9221, which has to do with dealing in or repairing motor vehicles or mobile homes or willful failure to comply with any administrative rule promulgated by the department.
[3] The surety bond provision applicable in Marshall provided the following, in pertinent part:

The bond shall be in a form to be approved by the department, and shall be conditioned upon the mobile home dealer's complying with the conditions of any written contract made by him in connection with the sale or exchange of any mobile home or recreational vehicle and his not violating any of the provisions of chapters 319 and 320 in the conduct of the business for which he is licensed. The bond shall be to the department and in favor of any person who shall suffer any loss as a result of any violation of the conditions hereinabove contained.
§ 320.77(11), Fla. Stat. (1975).
[4] Petitioners do contend that there were violations of section 320.27(9) because that subsection allows for the revocation of a dealer's license if the dealer willfully engages in a pattern of fraud. On the facts before us, however, no "pattern" of fraud has been established.
[5] The current version of section 627.428(1), Florida Statutes, is cited here because it is identical to the last three versions. Compare § 627.428(1), Fla. Stat. (1999), with § 627.428(1), Fla. Stat. (1997); § 627.428(1), Fla. Stat. (1995); and § 627.428(1), Fla. Stat. (1993).
[6] The current version of section 320.27(10), Florida Statutes, is cited here because it has undergone only one minor revision since the operative facts in the present cases occurred in April and May of 1995. See Ch. 95-148, § 916, at 1409-10, Laws of Fla. (making gender-specific language gender-neutral).
[7] We do not even have a transcript of any proceedings which involved a factual determination of the amount of any attorney's fees awarded.
[8] The Fifth District was correct to certify conflict with the First District's decision in Marshall, as the statutory language at issue here is nearly identical to the statutory language at issue in Marshall. Compare § 320.77(10)(11), Fla. Stat. (1975), with § 320.27(9)-(10), Fla. Stat. (1995); see also Majority op. at 95, 96-97.
[9] Compare § 320.27(10), Fla. Stat. (1999), with Ch. 85-176, § 4, at 1234, Laws of Fla.
[10] Prior to 1994, the prevailing party in civil litigation brought under the FDUTPA was mandatorily entitled to recover reasonable attorney's fees and costs from the nonprevailing party. See § 510.2105, Florida Statutes (1993). The Legislature amended section 501.2105 in 1994 to place an award of such fees and costs within the discretion of the trial court. See Ch. 94-298, § 4, at 2064, Laws of Fla.; see also § 501.2105, Fla. Stat. (Supp. 1994). This statutory change, however, should not alter the result in situations such as those in the present cases, where the trial court actually awards attorney's fees and costs. In such situations, the attorney's fees and costs become part of the judgment recoverable by the prevailing party, and are subject to execution. See § 501.2105(4), Fla. Stat. (1999).
[11] Aetna does not argue here, nor has it argued in any of the proceedings below, that costs do not constitute part of "any loss" as that term is used in section 320.27(10) and surety bonds or letters of credit issued pursuant to that statutory subsection. Likewise, in its opinion, the majority does not address the issue of costs. It is clear, however, that under the reasoning set forth in the majority opinion, costs would not be considered part of "any loss" because neither section 320.27(10) nor surety bonds or letters of credit issued pursuant to that statutory subsection mention costs. Similar to the situation with attorney's fees, however, I conclude that costs are recoverable as "any loss" under circumstances such as those presented in the cases here.
[12] I agree in concept with Aetna and the majority that the facts in the present cases do not establish a violation of an express provision of chapter 319 or chapter 320. However, violation of the FDUTPA is also a technical violation of section 320.27(9)(a), Florida Statutes. Further, the existence or absence of a chapter 319 or chapter 320 violation does not terminate the analysis.
[13] I would also disapprove Dealers Insurance Co. v. Centennial Casualty Co., 644 So.2d 571 (Fla. 5th DCA 1994), review denied, 658 So.2d 989 (Fla.1995), disapproved on other grounds by Nichols v. Preferred National Insurance Co., 704 So.2d 1371 (Fla.1997), on the additional basis that the Fifth District found the surety company that issued a bond pursuant to section 320.27(10) not liable for attorney's fees, despite the fact that the underlying contract breached by the motor vehicle dealer expressly provided for the recovery of such fees.
[14] The Department of Highway Safety and Motor Vehicles notifies a consumer of the existence of a bond or letter of credit if it determines that a loss has occurred due to a violation of chapters 319 or 320, Florida Statutes. See § 320.27(10)(b), Fla. Stat. (1999). However, there is no similar notice if a loss results from a violation of a written contract, as occurred here.