851 So.2d 724 (2003)
DAVID BOLAND, INCORPORATED, Appellant,
v.
TRANS COASTAL ROOFING COMPANY, et al., Appellees.
No. SC02-2210.
Supreme Court of Florida.
July 11, 2003.
Denis L. Durkin and Edgar E. Stanton of Baker & Hostetler LLP, Orlando, FL, for Appellant.
James O. Murphy, Jr. of Byrd and Murphy, Fort Lauderdale, FL; and Hala A. Sandridge of Fowler White Boggs Banker, P.A., Tampa, FL, for Appellees.
Brett D. Divers of Mills Paskert Divers, P.A., Tampa, FL, for The Surety Association of America, Amicus Curiae.
PER CURIAM.
We have for review a question of Florida law certified by the United States Court of *725 Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. Specifically, the Eleventh Circuit asks:
DOES FLORIDA STATUTE § 627.428 AUTHORIZE RECOVERY OF ATTORNEYS' FEES IN EXCESS OF A PERFORMANCE BOND'S FACE AMOUNT FROM A SUBCONTRACTOR'S SURETY, WHEN THE FEES CLAIMANT HAS NOT SHOWN INDEPENDENT MISCONDUCT ON THE PART OF THE SURETY?
Trans Coastal Roofing Co. v. David Boland, Inc., 309 F.3d 758, 761 (11th Cir. 2002).

BACKGROUND
The relevant facts of this case are summarized in the Eleventh Circuit's decision certifying its question to this Court:
[David Boland, Inc. (Boland) ] was the prime contractor on a training facility construction project for the United States Navy in Key West, Florida. In April 1993 Boland and [Trans Coastal Roofing Company (Trans Coastal) ] executed a subcontract under which Trans Coastal was to install roofing on certain structures erected by Boland. Pursuant to the subcontract, Trans Coastal provided a performance bond in the amount of $167,800, naming Boland as its obligee and [Intercargo Insurance Company (Intercargo) ] as its surety.
A dispute emerged between Boland and Trans Coastal over the roofing work, and litigation ensued in the Southern District of Florida. Both Trans Coastal and Boland claimed damages. After the district court dismissed Trans Coastal's claims without prejudice, Boland won a jury verdict against Trans Coastal, but not Intercargo, in the amount of $23,451.38. Boland prevailed on a motion for a new trial and in October 1998 a second jury awarded it a verdict against both Trans Coastal and Intercargo, jointly and severally, in the amount of $31,654.42. Boland thereafter moved the court for attorneys' fees of $357,121.52. The court awarded it $276,950.33, but determined Intercargo's liability to be limited to $167,800, the amount of the performance bond it issued.
Id. at 760. In limiting Intercargo's liability for attorneys' fees, the Southern District "rel[ied] on the logic set forth in [Nichols v. Preferred National Insurance Co., 704 So.2d 1371 (Fla.1997) ]" to conclude that "[i]n order to expand the surety's liability, some misconduct must be alleged and proven on the part of the surety  separate and apart from the misconduct of the principal that the sum of the bond covers." United States v. David Boland, Inc., Case No. 94-10062-CIV-PAINE, order at 6 (S.D. Fla. order filed Oct. 17, 2001). The court concluded that "because a [surety's] liability is coextensive with its principal, misconduct in addition to breach of the performance bond (such as unreasonable delay in payment) must be demonstrated in order to justify an expansion of the scope of the surety's liability." Id.
Boland appealed the Southern District's decision to limit its recovery of attorneys' fees from Intercargo. Because the case presents an issue of Florida law, the Eleventh Circuit deferred its decision pending certification of the above question to this Court.

DISCUSSION
The certified question raises an issue of first impression: whether a contractor who prevails against a subcontractor, on the basis of a contractual breach, and the subcontractor's *726 surety, on the basis of a performance bond, must prove that the surety engaged in misconduct independent of the subcontractor's contractual breach before an award of attorneys' fees under section 627.428, Florida Statutes (2002), against the surety may exceed the amount of the performance bond.
Boland argues that the Southern District erroneously limited Intercargo's liability for attorneys' fees because section 627.428 unambiguously mandates that a surety pay its obligee's attorneys' fees upon the rendition of a judgment against it. Boland asserts that there is a fundamental distinction between a surety's liability for damages, which is limited by the penal sum of its performance bond, and its statutory liability for attorneys' fees, which is not so limited. Further, Boland argues that the Southern District should not have relied upon the Nichols decision because it addressed liability for fees under a guardianship bond, which was subject to a statutory cap not applicable to performance bonds. In response, Intercargo urges this Court to rely upon Nichols v. Preferred National Insurance Co., 704 So.2d 1371 (Fla.1997), as the Southern District did, in order to reconcile statutory awards of attorneys' fees with the realities of suretyship law. Intercargo asserts that the bond itself limits Intercargo's total exposure, including attorneys' fees, and that breach of a performance bond alone is not adequate justification to extend a surety's scope of liability beyond that limit.
We begin our analysis by examining the basis of an award of attorneys' fees in this case. Section 627.428(1), Florida Statutes (2002), provides:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court... shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
Intercargo does not contest that section 627.428 is applicable to this suit.[1] As Intercargo has noted, section 627.428 is primarily directed toward claimants' entitlement to attorneys' fees and does not address the appropriate amount to be awarded, except to say that it should be "a reasonable sum." The plain language of that statute fails to address the effect, if any, of penal sums under bonds and is silent regarding whether proof of independent misconduct is necessary for an award to exceed such penal sums. Thus, if a limit exists to the amount that may be awarded under this statute, it must be found within another statute.
We find no other statute that limits the attorneys' fees liability of sureties under a performance bond. Thus, we conclude that this case is distinguishable from the Nichols decision. In Nichols, this Court found that although attorneys' fees could be awarded against a surety on a guardianship bond under section 627.428, the provision of section 744.357, Florida Statutes (1995), that "[n]o surety for a guardian shall be charged beyond the property of the ward," limits total recovery from a guardianship surety to the face amount of the guardianship bond. Nichols, 704 So.2d at 1374. However, relying on the principle that the penal amount of the bond covers *727 the misconduct of the principal, this Court also concluded that while an award of attorneys' fees and costs based solely on the negligence of a principal was limited by the amount of the guardianship bond, an award of attorneys' fees and costs incurred because the surety unreasonably delayed the payment of a claim was "not protected by section 744.357." Id. We, therefore, held that awards of attorneys' fees in such cases were limited by the mandate of section 744.357 unless the fees claimant establishes that the surety failed to act diligently and unreasonably delayed the payment of a claim. Id. Even though the question certified to this Court addresses a performance bond to which section 744.357 does not apply, Intercargo urges that the logic of Nichols should be applied here. The Nichols decision, however, rests entirely on section 744.357's limit to total recovery under guardianship bonds. Therefore, we answer the Eleventh Circuit's certified question in the affirmative.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs with an opinion, in which ANSTEAD, C.J., and PARIENTE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurring.
I concur with the answer to the certified question in view of the plain wording of the statute. However, I believe that the Legislature should examine whether construction contract sureties should come within the provisions of section 627.428. It is my view that the role of such a contract surety is sufficiently distinct from the role of insurers that issue insurance policies so that the attorney fee liability of a construction contract surety needs to be covered by a separate statute. See American Home Assurance Co. v. Larkin General Hospital, Ltd., 593 So.2d 195 (Fla.1992), in which Justice McDonald discusses the role of a construction contract surety.
ANSTEAD, C.J., and PARIENTE, CANTERO, and BELL, JJ., concur.
NOTES
[1] In Nichols, we recognized that the term "insurer" is clearly defined under the Florida Insurance Code to include a "surety." See 704 So.2d at 1373; § 624.03, Fla. Stat. (2002).