Klingensmith, J.
Appellant Juan Sanchez was awarded attorney’s fees against appellees AN Luxury Imports of Pembroke Pines, Inc. (“ANL”) and Safeco Insurance Company of America (“Safeco”) (collectively, “defendants”). He appeals that order, claiming the fee awards were unreasonably low. Defendants cross-appeal, arguing that the *725 fee award against Safeco was too high since it should have been capped at the amount of the surety bond it issued on ANL’s behalf. We affirm the fee award against ANL, and find the fee award against Safeco should have been issued under a different statute and capped at the amount of the surety bond.
I. Background
In 2008, ANL bought a vehicle that had been returned at the end of a year-long lease after inspection by ANL’s finance and used car managers. In the two weeks following this purchase, the vehicle was inspected again to see if it qualified as a certified preowned vehicle (a “CPO”). If it qualified, the manufacturer, Mercedes-Benz USA, would cover it with an additional limited warranty after the dealership completed certain reconditioning. The vehicle qualified as a CPO and, consistent with the inspections, the Carfax report at the time was “clean”—indicating that it had not been in an accident.
Appellant purchased the vehicle from ANL and over the next year drove it almost 10,000 miles without any problems. In November 2009, appellant took the vehicle to the dealership for its annual service and inquired about trading it in. The sales representative then printed a Carfax report. This report showed that the vehicle had been in an accident, but did not indicate that there was any frame or structural damage.[1]
Aware of the inconsistency between the two Carfax reports, appellant communicated with both Carfax and the Florida Department of Motor Vehicles and learned that the vehicle had in fact been in an accident seven months prior to his purchase. This new report was the first time either appellant or ANL had learned of this accident.
Thereafter, appellant contacted an attorney. Despite the absence of any reported problems prior to November 2009, over the next few months appellant brought the vehicle to the dealership with complaints of transmission, wheel, and braking issues. ANL covered all repairs covered by the CPO warranty, with little or no charge in most cases.
In June 2010, appellant filed suit against both ANL and its surety, Safeco, for fraud or negligent misrepresentation, as well as several violations of the Florida Deceptive and Unfair Trade Practices Act, sections 501.201-.213, 501.975-.976, Florida Statutes (2010) (“FDUTPA”). Appellant sought compensatory and punitive damages, damages for mental anguish, rescission, and declaratory and injunctive relief.
II. The Arbitration Proceedings
Pursuant to the arbitration clause in the vehicle purchasing documents, the parties arbitrated the claims. During arbitration, appellant maintained that the vehicle could not have qualified as a CPO because it allegedly sustained frame and structural damage. However, a representative of Mercedes-Benz USA testified that once the vehicle qualified as a CPO, Mercedes would honor that status even if “something thereafter shows up on a Carfax report,” explaining that “[i]f the certification had been put on the vehicle, we wouldn’t pull it back off. We wouldn’t penalize the customer for that.” Other evidence was presented that mere repainting or paint damage upon inspection would not have automatically disqualified the vehicle from CPO status because paint issues do not necessarily stem from accidents. Appellant also filed a copy of the form approved by the *726 State of Florida Department of Highway Safety and Motor Vehicles for motor vehicle dealer surety bonds, which stated, “the aggregate liability of the surety hereunder shall in no event, in any one (1) year, exceed the sum of the bond.”
The arbitrator issued a ruling in favor of ANL on all of the claims except for one of the FDUTPA claims, finding that ANL violated FDUTPA by “not appropriately representing” the general condition of the vehicle when it presented appellant with the clean Carfax report which did not reference the accident. The ruling noted that although there was no evidence that ANL knew the vehicle had been in an accident, when ANL gave the initial Carfax report to appellant it was aware that such reports are often not up to date or incomplete. On this basis, the arbitrator awarded appellant $3,500 for the reduction in value of the vehicle caused by the unreported accident. The trial court confirmed the award and entered final judgment for $3,500 plus interest, while reserving jurisdiction to consider post-trial motions for attorney’s fees and costs.
As to the award of attorney’s fees, the arbitrator did not explicitly determine who the prevailing party was since appellant’s award was significantly less than the amount he had originally claimed. Consequently, the attorney’s fee issue was returned to the trial court where both parties moved for prevailing party attorney’s fees pursuant to FDUTPA sections 501.2105 and 501.211. Additionally, appellant separately moved for attorney’s fees and a multiplier against Safeco pursuant to section 627.428, Florida Statutes (2012).
III. The Attorney’s Fees Hearings
The court conducted evidentiary hearings on entitlement to and amount of attorney’s fees. Appellant’s counsel conceded the court had to consider the “number of reasonable hours” expended on the case and not just the total number of hours. Nevertheless, she claimed that she spent 549 hours on the case for a fee of $223,700 and 67.9 additional hours in preparation for the fee hearing all at a $450 hourly rate, but did not produce any documents establishing that she had ever received or been awarded that rate in the past. Appellant’s expert testified that counsel was entitled to an attorney’s fee award of $203,492.50 for 457.2 hours at $400 and $450 per hour, and that counsel’s paralegal’s time should total $9,524 based on a $110 to $200 hourly rate. The expert admitted, though, that he did not eliminate from his calculation the time spent on issues related to appellant’s various unsuccessful claims. The expert further testified that he charged just $300 per hour—not $450 per hour—despite his twenty-five years of experience with this type of litigation.
Defendants’ counsel pointed out that section 501.976, which is the FDUTPA attorney’s fees statute specifically governing vehicles, mandates the trial court to consider “the amount of actual damages in relation to the time spent” in determining the reasonableness of an attorney’s fee award. Concerning this issue, defendants’ fee expert testified, among other things, that: appellant lost on all of his claims except “representing the quality of care of servicing or condition unless known to be true based on Carfax”; appellant’s agreement with his counsel was not “entirely” contingent; a multiplier was unavailable under FDUTPA; and appellant’s only prevailing claim could have been litigated in a short period of time with the two Carfax reports and no expert testimony. The expert opined that based on three different types of analyses, the appropriate fee award for appellant’s attorney given the time spent on the successful Carfax claim *727 ranged from $17,546 to $21,350, with the $21,350 figure being the best reflection of “the reasonable amount of effort required to litigate the issues that were actually won.”[2]
The trial court issued an omnibus order (“Omnibus Order”) finding that appellant was entitled to an attorney’s fee award despite failing to prevail on the CPO issue, the most significant and time-consuming issue in the case, because he obtained the $3,500 damage award on one of his FDUT-PA claims. The court found that “the fee [was] almost entirely contingent other than the initial $2,000.00 retainer” and that under sections 501.2105 and 501.976, the “amount of time actually spent was grossly disproportional” to the $3,500 damage award. The court then awarded appellant $29,885 in attorney’s fees and $8,800.13 in costs, totaling $38,685.13.
Instead of awarding that amount solely against ANL, the court imposed joint and several liability against both ANL and Safeco for the fee award, thereby essentially making Safeco’s liability joint and several with ANL based on the FDUTPA attorney’s fees statutes as opposed to section 627.428.[3] Also, the Omnibus Order did not analyze the applicability of a fee multiplier, further suggesting that the award against both Safeco and ANL was entered pursuant to the FDUTPA attorney’s fees statutes and not section 627.428.
This appeal and cross-appeal followed.
IV. Analysis
On appeal, appellant argues: the trial court should have granted a separate fee award against Safeco under section 627.428 (in addition to the fee awarded against Safeco by the Omnibus Order), and should have applied a fee multiplier to that award; the fee awards should have been higher because FDUTPA allows for fees for all of the litigation, not just the litigation related to the single successful FDUTPA claim; and the Omnibus Order improperly failed to include prejudgment interest. In them cross-appeal, defendants contend that the fee award against Safeco should have been capped at the face amount of the surety bond it issued to ANL.
“A party’s entitlement to an award of attorneys’ fees under a statute or a procedural rule is a legal question subject to de novo review.” Nathanson v. Morelli, 169 So.3d 259, 260 (Fla. 4th DCA 2015).
Upon careful consideration, we believe that both parties have meritorious arguments in certain respects. Appellant is correct in maintaining that he should have been awarded attorney’s fees under section 627.428, while defendants also correctly assert that Safeco, as a surety, could not be assessed attorney’s fees beyond the face value of the bond. At the same time, though not argued by either party, our *728 review of the award also reflects that the trial court erred by assessing attorney’s fees against Safeco under the FDUTPA statutes since FDUTPA explicitly provides that sureties are not subject'to such assessments.
Section 501.2105 provides, in pertinent part:
(1) In any civil litigation resulting from an act or practice involving a violation of this part ... the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney’s fees and costs from the nonprevailing party.
(2) The attorney for the prevailing party shall submit a sworn affidavit of his or her time spent on the case and his or her costs incurred for all the motions, hearings, and appeals to the trial judge who presided over the civil case.
(3) The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit.
§ 501.2105, Fla. Stat, (2010). Moreover, section 501.976, in pertinent part, specifies a proportionality element to evaluating the reasonableness of attorney’s fees awards in successful FDUTPA actions against motor vehicle dealers:
In any civil litigation resulting from a violation of this section, when evaluating the reasonableness of an award of attorney’s fees to a private person, the trial court shall consider the amount of actual damages in relation to the time spent.
§ 501.976, Fla. Stat. (2010).
In the recent case of Gustafsson v. Aid Auto Brokers, Inc., No. 4D15-1951, 212 So.3d 405, 407-09, 2017 WL 362579, at *2-3 (Fla. 4th DCA Jan. 25, 2017), this court unequivocally ruled that sureties are not subject to attorney’s fees under FDUTPA:
Here, under the plain language of the MSA [mediated settlement agreement], GAI [the entity that had issued a $25,000 motor vehicle dealer surety bond] was not obligated to pay the plaintiffs’ attorney’s fees. The attorney’s fees provision of the MSA states in relevant part: “On the question of GUSTAFS-SON/STILES’ legal fees, we agree that: Plaintiff is entitled to reasonable attorneys’ fees pursuant to § 501, Fla. Stat. only.” (italics added). The MSA thus limited the plaintiffs entitlement to attorney’s fees to Chapter 501, which does not apply to entities—such as sureties— that are regulated by the Department of Financial Services. See § 501.212(4)(d), Fla. Stat. (2015) (stating that FDUT-PA does not apply to the following: “Any person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.”)-, see also Hubbel v. Aetna Cas. & Sur. Co., 758 So.2d 94, 94-98 (Fla. 2000) (in an action alleging a motor vehicle dealer’s violation of FDUTPA, attorney’s fees could not be recovered from a surety bond under the statute requiring motor vehicle dealers to obtain surety bonds for customers who suffered “any loss” resulting from a dealer’s failure to comply with a contract).
Because the MSA stated that the plaintiffs’ entitlement to attorney’s fees was limited to Chapter 501, the MSA necessarily excluded GAI from any obligation to pay the plaintiffs’ attorney’s fees.
Id. (emphasis added).
Based on the statute and interpretive case law, we find that the trial court *729 erred in holding Safeco jointly and severally liable for any section 501.2105 attorney’s fees awarded against ANL because section 501.212(4)(d) specifically precludes application of any section within the FDUTPA statutes to sureties.
Section 627.428(1) provides:
Upon the rendition of a judgment Or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had-.
§ 627.428(1), Fla. Stat. (2012) (emphasis added).
In general, section 627.428 applies to sureties that issue motor vehicle dealer bonds under section 320.27(10), Florida Statutes (2008). In Snow v. Jim Rathman Chevrolet, Inc., 39 So.3d 368, 369 (Fla. 5th DCA 2010), which involved the sale of a defective ear by a dealer that had “obtained ... a dealer surety bond as required under section 320.27(10),” the Fifth District held that “section 627.428(1) does authorize an award of attorney’s fees against a surety that has issued a bond pursuant to section 320.27(1).”
The basic facts in Snow were similar to those of the instant case. Id. There, the Fifth District explained the significance of the relevant statutes and case law:
A surety is considered by the courts to fit within the definition of insurer and to be subject to the same regulations as insurers in the Florida Insurance Code, Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins., 945 So.2d 1216, 1224 (Fla. 2006) (quoting section 624.03, Florida Statutes, which defines an insurer as “every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity”) (emphasis omitted); Nichols v. Preferred Nat’l Ins. Co., 704 So.2d 1371, 1372 (Fla. 1997). In Nichols, for example, the court held that section 627.428 allows awards of attorney’s fees against sureties that issue guardianship bonds. The question presented here is whether section 627.428 allows attorney’s fees against a surety that issues motor, vehicle dealer bonds.
We believe the analysis in Nichols is instructive. The court in Nichols first concluded that under the plain language of section 627.428, “reasonable attorney’s fees and costs are to be awarded against an insurer upon rendition of a judgment against the insurer in favor of the insured or beneficiary.” Nichols, 704 So.2d at 1373. Second, the court concluded that sureties fit the definition of “insurers” in the Florida Insurance Code, which includes section 627.428. Id. Third, the court examined whether a specific provision existed governing attorney’s fees under the statute requiring the bond, specifically looking to the chapter governing guardianship bonds, chapter 744, Florida Statutes (1995). Id. When the court found no specific statute in'chapter 744 governing attorney’s fees, it held that attorney’s fees are allowed under the general provision of section 627.428. Id.
Although Nichols involved guardianship bonds, for purposes of our analysis, we do not see any notable difference between sureties that issue guardianship bonds and those, like Fidelity, that issue motor vehicle dealer bonds. Applying the Nichols analysis, we conclude that Fidelity is a surety that fits the defini *730 tion of insurer for purposes of applying the provisions of section 627.428. We do not find any specific statute that governs attorney’s fees in instances involving dealer bonds issued under section 320.27(10). Accordingly, we hold that Fidelity, as an insurer, is subject to the attorney’s fees provisions of section 627.428.
Id. at 370-72.
Since section 627.428 applies to appellant’s claim for fees against Safeco, and appellant obtained a judgment in the underlying case in his favor, any award of section 627.428 fees against Safeco is a mandatory, non-discretionary requirement of law. See Rodriguez v. Gov’t Emps. Ins. Co., 80 So.3d 1042, 1044 (Fla. 4th DCA 2011) (holding that plaintiff “merely needed to obtain a judgment in his favor in order to be entitled to an award of attorneys’ fees” based on section 627.428); Ramirez v. United Auto. Ins. Co., 67 So.3d 1174, 1175 (Fla. 3d DCA 2011) (reversing order of circuit court’s appellate division that denied appellate attorney’s fees for a successful plaintiff in a PIP policy action who prevailed on appeal because the order was “directly contrary to the mandatory, non-discretionary requirements of law as provided by section 627.428”); see also Citizens Prop. Ins. Corp. v. Bascuas, 178 So.3d 902, 904 (Fla. 3d DCA 2015) (“The final order entered ... was a judgment against an insurer and in favor of an insured, triggering [insureds’] entitlement to a reasonable attorney’s fee [under section 627.428] in defending against [insurer’s] counterclaim. ... [TJhat [insureds] did not obtain a money judgment ... does not preclude their entitlement to fees.”); Cont’l Cas. Co. v. A.W. Baylor Versapanel-Plastering, Inc., 97 So.3d 937, 940 (Fla. 5th DCA 2012) (“Under [section 627.428 and section 627.756, Florida Statutes], the claimant is not required to be the prevailing party on the significant issues in order to recover attorney’s fees, but need only obtain a judgment—no matter how minimal the amount of damages awarded.”).
Still, “in determining reasonable attorney’s fees under [section 627.428], the trial court should consider whether the insured prevailed on some but not all the issues that can be separately determined and whether the insured’s actions extended the litigation or increased its cost.” Axis Surplus Ins. Co. v. Contravest Constr. Co., 877 F.Supp.2d 1268, 1270 (M.D. Fla. 2012) (citing Danis Indus. Corp. v. Ground Improvement Techniques, Inc., 645 So.2d 420, 421 (Fla. 1994)); see also § 627.428(1) (“[T]he trial court ... shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had.” (Emphasis added)); Citizens Prop. Ins. Corp., 178 So.3d at 904 (noting that section 627.428 allows for reasonable attorney’s fees).
That the trial court awarded fees in this case against Safeco under section 501.2105 as opposed to section 627.428 is also significant because the former statute does not allow for a fee multiplier, while the latter statute does. See Stewart Select Cars, Inc. v. Moore, 619 So.2d 1037, 1038 (Fla. 4th DCA 1993) (holding that a contingency risk multiplier is unavailable under section 501.2105 because the statute “provides a reasonable attorney fee for the prevailing party ‘for the hours actually spent on the case’ ”); accord Corvette Shop & Supplies, Inc. v. Coggins, 779 So.2d 529, 531 (Fla. 2d DCA 2000) (same). The trial court was therefore correct to not consider a multiplier for the fee award entered against either Safeco or ANL -under section 501.2105.
*731 On the issue of fee multipliers under section 627.428, the Fifth District in Holiday v. Nationwide Mutual Fire Insurance, 864 So.2d 1215, 1218 (Fla. 5th DCA 2004), held:
The legislative intention underpinning section 627.428 is to “discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney’s fees when they are compelled to defend or sue to enforce their insurance contracts.” See Insurance Co. of N. Am. v. Lexow, 602 So.2d 528, 531 (Fla. 1992). Thus, if a dispute is within the scope of this statute and an insured must enforce his or her rights under a policy, and if a judgment is rendered against the insurer, then the insurer is required to pay attorney’s fees for the insured or beneficiary. See Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla. 1999); Bassette v. Standard Fire Ins. Co., 803 So.2d 744, 746 (Fla. 2d DCA 2001). To learn whether a contingent risk multiplier may be applicable to fees awarded under section 627.428, we must examine Quanstrom.
The Supreme Court in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), identified three different categories of cases in which attorney’s fees may be awarded by a court. The Court concluded that the second of those categories, which applies principally to tort and contract cases, including cases such as the present controversy involving an insured and his or her insurance company, is one in which a contingency risk multiplier may be appropriate. In Quanstrom the Court reaffirmed the principles set forth in Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), with respect to these cases, and added three additional factors to be considered in determining whether a multiplier should be applied:
1. Whether the relevant market requires a contingency fee multiplier to obtain competent counsel;
2. Whether the attorney was able to mitigate the risk of nonpayment in any way; and
3. Whether any of the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his or her client.
Id.; see also Allstate Ins. Co. v. Regar, 942 So.2d 969, 975 (Fla. 2d DCA 2006) (reaffirming the Quanstrom holding that a “multiplier could be appropriate under section 627.428 when there is a risk of nonpayment”). As part of its consideration, “[t]he trial court is not required to apply a contingency multiplier, but is required only to consider whether a multiplier is warranted.” Nalasco v. Buckman, Buckman & Reid, Inc., 171 So.3d 759, 762 (Fla. 4th DCA 2015).
By not awarding fees against Safe-co under section 627.428, the court’s Omnibus Order failed to consider the applicable Quanstrom factors to determine whether a multiplier should have applied. Normally, where a trial court fails to make such a consideration, the issue must be remanded to the trial court for it do so. Yet here, as we agree with defendants that any attorney’s fees assessed against Safeco must be capped at the amount of the bond, and the trial court already found that appellant was entitled to reasonable fees in excess of the bond amount, it would be a waste of judicial resources to have the trial court consider on remand the appropriateness of a multiplier.
Concerning defendants’ argument that any award against Safeco should have been limited to the face amount of the bond, section 320.27(10) provides, in relevant part:
*732 (10) Surety bond or irrevocable letter of credit required.—
(a) Annually, before any license shall be issued to a motor vehicle dealer, the applicant-dealer of new or used motor vehicles shall deliver to the department a good and sufficient surety bond or irrevocable letter of credit, executed by the applicant-dealer as principal, in the sum of $25,000.
(b) Surety bonds and irrevocable letters of credit shall be in a form to be approved by the department and shall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of chapter 319 and this chapter in the conduct of the business for which the dealer is licensed. Such bonds and letters of credit shall be to the department and in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions hereinabove contained. When the department determines that a person has incurred a loss as a result of a violation of chapter 319 or this chapter, it shall notify the person in writing of the existence of the bond or letter of credit. Such bonds and letters of credit shall be for the license period, and a new bond or letter of credit or a proper continuation certificate shall be delivered to the department at the beginning of each license period. However, the aggregate liability of the surety in any one year shall in no event exceed the sum of the bond ....
§ 320.27(10), Fla. Stat. (2008) (emphases added).
In David Boland, Inc. v. Trans Coastal Roofing Co., 851 So.2d 724, 726-27 (Fla. 2003), the Florida Supreme Court explained how it previously determined in Nichols that a statute similar to section 320.27 limited a surety’s liability for section 627.428 attorney’s fees to the face amount of a guardianship bond (except where the surety engaged in independent misconduct):
[S]ection 627.428 is primarily directed toward claimants’ entitlement to attorneys’ fees and does not address the appropriate amount to be awarded, except to say that it should be “a reasonable sum.” The plain language of that statute fails to address the effect, if any, of penal sums under bonds and is silent regarding whether proof of independent misconduct is necessary for an award to exceed such penal sums. Thus, if a limit exists to the amount that may be awarded under this statute, it must be found within another statute.
We find no other statute that limits the attorneys’ fees liability of sureties under a performance bond. Thus, we conclude that this case is distinguishable from the Nichols decision, In Nichols, this Court found that although attorneys’ fees could be awarded against a surety on a guardianship bond under section 627.428, the provision of section 744.357, Florida Statutes (1995), that “[n]o surety for a guardian shall be charged beyond the property of the ward,” limits total recovery from a guardianship surety to the face amount of the guardianship bond. Nichols, 704 So.2d at 1374. However, relying on the principle that the penal amount of the bond covers the misconduct of the principal, this Court also concluded that while an award of attorneys’ fees and costs based solely on the negligence of a principal was limited by the amount of the guardianship bond, an award of attorneys’ fees and costs incurred because the surety unreasonably delayed the *733 payment of a claim was “not protected by section 744.357.” Id. We, therefore, held that awards of attorneys’ fees in such cases were limited by the mandate of section 744.357 unless the fees claimant establishes that the surety failed to act diligently and unreasonably delayed the payment of a claim. Id.
David Boland, Inc., 851 So.2d at 726-27 (emphasis added).[4]
The language of section 744.357 providing that “[n]o surety for a guardian shall be charged beyond the property of the ward” is substantively similar to the language of section 320.27(10)(b) providing that “the aggregate liability of the surety in any one year shall in no event exceed the sum of the bond.”
In Gene B. Glick Co. v. Fischer-McGann, Inc., 667 So.2d 865, 867 (Fla. 4th DCA 1996), although it did not involve a surety bond issued pursuant to section 320.27(10), this court reversed a “primary judgment plus interest and attorney’s fees” to the extent that the total of the award “exeeed[ed] the amount payable under the surety’s bond,” and remanded to the trial court with instructions to “restrict the sums ordered payable by the surety to the amount of its bonded obligation.” See also Aetna Cas. & Sur. Co. v. Buck, 594 So.2d 280, 283 (Fla. 1992) (holding that a surety’s lien-transfer bond under section 713.24, Florida Statutes, did not “allow[ ] a surety’s liability to be increased beyond the face amount of the bond in order to cover costs”); Bayview Constr. Corp. v. Jomar Props., LLC, 97 So.3d 909, 912 (Fla. 4th DCA 2012) (“In the event Jomar is unable to pay the difference, or to increase the [section 713.24] bond on Bay-view’s later request, Bayview may have no recourse, because a surety is liable only up to the face amount of the transfer bond.”); Fid. & Deposit Co. of Md. v. La Ctr. Trucking, Inc., 559 So.2d 1242, 1243 (Fla. 4th DCA 1990) (noting that “the parties agree that the judgment amount for which the surety is responsible cannot exceed the amount posted by the surety,” with regard to a bond posted for a development project); cf. Vital Pharms., Inc. v. Prof'l Supplements, LLC, 210 So.3d 766, 767-68 (Fla. 4th DCA 2017) (finding that appellees were not entitled to any award where the absence of a bond rendered an injunction unenforceable, as any award was limited by law to an amount not exceeding that of the injunction bond).
Therefore, Safeco’s liability for section 627.428 attorney’s fees should have been limited to the face amount of the $25,000 surety bond, unless appellant could have established that Safeco “failed to act diligently and unreasonably delayed the payment” of appellant’s successful underlying claim. See David Boland, Inc., 851 So.2d at 727.
V. Conclusion
Accordingly, we reverse the fee award against Safeco for $29,885 in attorney’s fees and $8,800.13 in costs (totaling $38,685.13) because it was wrongly issued under section 501.2105, in addition to the fact that it exceeded the bond amount. We remand this matter to the trial court to vacate the prior fee award against Safeco *734 and enter a new fee award against Safeco under section 627.428 that is capped at $25,000 (less the damages owed to appellant for the successful underlying FDUT-PA claim). See § 320.27(10), Fla. Stat. As appellant did not allege—and the record before us does not demonstrate—that Safeco unreasonably delayed payment to appellant of the underlying claim, further proceedings on that matter are unnecessary. See Nichols, 704 So.2d at 1374 (explaining that statutorily capped bond precluded section 627.428 fee award against a surety from exceeding the cap, absent proof that surety unreasonably delayed payment of underlying claim). We affirm without comment on all other issues raised in both the appeal and cross-appeal.

Affirmed in part, Reversed in part and Remanded.

Levine and Kuntz, JJ., concur.

. The newer Carfax report indicated the accident occurred in October 2009, but that was simply a reflection of when the vehicle’s report was updated.

. Defendants’ fee expert reached the $21,350 estimation based on his conclusions that 61 hours were spent on the successful claim and that appellant's attorney was entitled to a $350 hourly rate.

. While the court's Omnibus Order acknowledged in a footnote that a prior order was issued that ruled appellant was entitled to attorney’s fees against Safeco pursuant to section 627.428, that Omnibus Order did not specify the authority under which it (the Omnibus Order) was awarding the fees. The amount assessed against Safeco was only delineated by the Omnibus Order, which the trial court clarified (in its denial of appellant's motion for rehearing) was effective against Safeco under joint and several liability with ANL. Thus, although appellant was previously granted entitlement to fees against Safeco under section 627.428, he was only awarded attorney’s fees against Safeco under section 501.2105 by way of Safeco’s joint and several liability with ANL.

. In David Boland, Inc., our supreme court ultimately decided that proof of a surety’s independent misconduct was not required to award attorney’s fees against a surety in excess of the amount of a performance bond on a construction contract, as there was no corresponding statute that capped the surety’s liability to the face value of such a bond. 851 So.2d at 727. This is distinguishable from Nichols and the instant case; in Nichols, section 744.357 provided such a limit for guardianship bonds, and here, section 320,27(10) provides such a limit for motor vehicle'bonds. See Nichols, 704 So.2d at 1374,